In the Matter of the Transfer Tax upon the Estate of
JOHN C. KLATZL, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; MARY E. KLATZL et al., Individually and as
Executrices, Respondents.

Real property — husband may convey to himself and wife as
"tenants by the entirety" — on death of husband transfer tax
assessable on one-half of value of property.

1. The creation of a tenancy by the entirety is permitted by law
and a husband may by conveyance to himself and his wife create
such a tenancy, thereby reserving to himself the same rights he
would have under a deed from a third person. (Per WILLARD
BARTLETT, Ch. J., HISCOCK, COLLIN and CARDOZO, JJ.)

2. Where a husband conveyed real property to himself and his
wife "as tenants by the entirety," upon the death of the husband
his one-half interest became subject to a transfer tax. (Per WILLARD BARTLETT, Ch. J., CUDDEBACK, HOGAN and SEABURY, JJ.)

Matter of Klatzl, 166 App. Div. 921, reversed.

(Argued May 26, 1915; decided October 12, 1915.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
January 29, 1915, which affirmed an order of the New
York County Surrogate's Court assessing a transfer tax
upon the estate of John C. Klatzl, deceased.

*Alexander Otis, Schuyler C. Carlton* and *Lafayette
B. Gleason* for appellant. The deed in question did not
create a tenancy by the entirety but did create a tenancy
in common. (*Bertles* v. *Nunan,* 92 N. Y. 152; *Zorntlein*
v. *Bram,* 100 N. Y. 12; *Stelz* v. *Shreck,* 128 N. Y. 263;
*Hiles* v. *Fisher,* 144 N. Y. 306; *Dressler* v. *Mulhern,* 77
Misc. Rep. 476; 1 Washburn on Real Property [8th ed.],
529.) If any joint interest passed to Mrs. Klatzl by the
deed it was taxable as a gift to take effect at death.

(*Saxon* v. *Saxon,* 46 Misc. Rep. ·202; *Matter of Keeney,* 194 N. Y. 281; *Matter of Green,* 153 N. Y. 223.)

*John Francis O'Neil* for respondents. A conveyance to husband and wife creates an estate by the entirety, unless an intent to create a different estate is expressed: (2 Blackstone's Comm. 182; *Bertles* v. *Nunan,* 92 N. Y. 152.) A person by a deed may convey real property to himself and wife as tenants by the entirety. (L. 1896, ch. 272, § 26; *Hiles* v. *Fisher,* 144 N. Y. 306; *Colson* v. *Baker,* 42 Misc. Rep. 407; *Matter of de Escoriaza,* N. Y L. J., Nov. 5, 1914.)

Seabury, J. John C. Klatzl, a resident of this state, died February 7th, 1913, leaving him surviving his widow, Mary Emma Klatzl, and a daughter, Emma M. Klatzl, who are the respondents in this proceeding. By his will the deceased gave all of his property in equal shares to his wife and daughter. On February 16th, 1906, the deceased executed a deed to the premises No. 323 East Seventy-fifth street in the city of New York. The consideration expressed in the deed was $100. The deed provides: " This indenture made the 16th day of February in the year nineteen hundred and six between John C. Klatzl of the Borough of Manhattan, City, County and State of New York, party of the first part, and the said John C. Klatzl and Mary Emma Klatzl, his wife, of the same place as tenants of the entirety, parties of the second part."

The tax appraiser reported to the surrogate that the value of the real estate was $12,000, and that it passed to the respondents herein subject to the transfer tax. An order was entered fixing the tax upon the basis of the report of the appraiser. The respondents appealed to the surrogate from so much of the report and order entered thereon as adjudged that the real property was subject to taxation under the Transfer Tax Law. The surrogate reversed the order fixing the tax upon the ground that

the deed from the deceased to himself and wife created a tenancy by the entirety and that Mrs. Klatzl, therefore, succeeded to the entire property by reason of the deed and that the transfer was not subject to taxation under the will. The order of the surrogate was affirmed by the Appellate Division. It is necessary to determine what estate in the property Mrs. Klatzl acquired by virtue of the deed of her husband and whether any interest in that real property passed to the respondents under the will of the deceased which is subject to the transfer tax. It is claimed that the deed from the deceased to himself and wife created an estate in the deceased and his wife as tenants by the entirety. At common law a conveyance by a third person to husband and wife creates a tenancy by entirety. Such an estate is founded upon the ancient principle of the common law which regarded the husband and wife as one person. (Blackstone's Comm. book I, p. 442; Bl. Comm. book II, p. 182; 2 Kent's Comm. p. 132.) Neither the provision of the Revised Statutes that " every estate granted or devised to two or more persons, in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenancy " (3 R. S. [7th ed.] 2179), nor the legislation that has been enacted in reference to the rights and property of married women and permitting husband and wife to contract directly with one another, preclude the creation of a tenancy by entirety. After some fluctuation of opinion (*Meeker* v. *Wright*, 76 N. Y. 262) it is now settled that this tenancy is still recognized in the jurisprudence of this state. (*Bertles* v. *Nunan*, 92 N. Y. 152; *Zorntlein* v. *Bram*, 100 N. Y. 12; *Stelz* v. *Shreck*, 128 N. Y. 263.) The learned surrogate was of the opinion that as section 56 of the Domestic Relations Law permitted husband and wife to convey directly to one another the effect of the conveyance by the husband " to himself and wife as tenants of the entirety was to make her a tenant of the entirety with him." This decision seems

to us to ignore the principle upon which the common-law doctrine of a tenancy by entirety rests and to be contrary to the decisions of this court which have construed the statutes designed to remove the common-law disabilities of married women. A tenancy by entirety exists by virtue of the common-law principle of the unity of husband and wife. In so far as that principle imposed disabilities upon married women the legislature, in its effort to remove such disabilities, has by express enactment modified it. It is clear, however, as said by Judge EARL, " that whenever it intended an invasion of that rule, it made it by express enactment." (*Bertles* v. *Nunan, supra*, p. 160.) If the legislature should wholly abrogate that principle it would remove the basis upon which alone a tenancy by entirety rests. Nor does the decision in *Hiles* v. *Fisher* (144 N. Y. 306, 312) support the conclusion reached below. That case held that the statute taking away the husband's right to the rents and profits of his wife's lands during their joint lives was applicable to a tenancy by entirety, but that the common-law doctrine of tenancy by the entirety was not abrogated. In that case it was pointed out with great particularity that the common-law right of the husband " to the usufruct was not an incident of the tenancy, but of the marital right operating upon property so held, as upon all other real property of the wife." The respondents contend that if the estate granted did not create a tenancy by the entirety, it created a joint tenancy. It is urged that because survivorship is a common attribute of joint tenancy and tenancy by entirety, that, therefore, the estate created by the deed of the deceased to himself and wife should be regarded as a joint tenancy.

The conclusion suggested does not follow from the reason assigned. While a tenancy by entirety resembles a joint tenancy in that survivorship attaches to both, it is not a joint tenancy in substance or form. (*Stelz* v. *Shreck*, 128 N. Y. 263, 266; *Barber* v. *Harris*, 15 Wend.

615.) It involves a more intimate union of ownership than joint tenancy or any other estate. Joint tenants are seized *per my et per tout,* whereas tenants by entirety are seized *per tout et non per my.* (History of Eng. Law, Pollock & Maitland, vol. 2, p. 434.) In a tenancy by entirety the survivor takes the estate "not by right of survivorship simply, but by virtue of the grant which vested the entire estate in such grantee." (*Bertles* v. *Nunan, supra,* 156.) As Judge COWEN, in *Jackson* v. *McConnell* (19 Wend. 175, 178) said: "The survivorship presents the greatest formal resemblance; and yet, instead of putting that on the notion of a joint tenancy, the authorities all refer it to the established effect of a conveyance to husband and wife, pretty much independent of any principles which govern other cases." At common law a conveyance made to two persons who are not husband and wife would create a joint tenancy. (*Stelz* v. *Shreck, supra.*) Under our statute if we regard the conveyance as made to two persons, unless expressly declared to be a joint tenancy, it creates a tenancy in common. (3 R. S. [7th ed.] p. 2179, section 44.) A conveyance by a husband to himself and wife in the absence of any statement that a joint tenancy is designed to be created, operates to make the husband and wife tenants in common. In *Saxon* v. *Saxon* (46 Misc. Rep. 202) the estate granted was expressly declared to be a joint tenancy and the grant was, therefore, given that effect. In the case under consideration such a purpose is not expressed and as has already been shown the mere fact that survivorship is an attribute which attaches to both joint tenancies and tenancies by entirety does not of itself justify the conclusion that the estate intended to be conveyed was a joint tenancy. We conclude, therefore, that the surrogate was in error in holding that the deed of the husband to himself and his wife created a tenancy by the entirety. Under that deed the husband and wife became tenants in common of the property in

question. As tenant in common the wife was seized of an undivided one-half interest in the property. The husband was seized of the remaining one-half undivided interest in the property and that interest passed to the respondents under his will subject to the transfer tax.

The orders of the Appellate Division and of the Surrogate's Court should be reversed, with costs, and the proceeding remitted to the surrogate to assess the transfer tax upon one-half the value of the property.

WILLARD BARTLETT, Ch. J. (concurring in result only). I think that the value of the property held by John C. Klatzl and his wife as tenants by the entirety was subject to a transfer tax but only to the extent of one-half of such value.

I am entirely clear that the wife took the property by virtue of the deed from her husband to her — not under his will — and that after the conveyance he could not have devised it away from her. The respective rights of husband and wife in land held by them as tenants by the entirety are settled by the decision of this court in *Hiles* v. *Fisher* (144 N. Y. 306). The only substantial difference between such a tenancy and a joint tenancy is that the tenancy cannot be severed except by their joint consent. The creation of such an estate is permitted by law, and I see no reason why the husband could not convey to his wife such an estate as she would get by a similar deed to them from a third person, and at the same time reserve for himself the same rights he would have under such a deed. Even if the deed created a mere joint tenancy it would be good. The statutory provision that " every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be in joint tenancy " does not require that the identical words " joint tenancy " shall be used in order to create such estate. It is sufficient if there is an apt description of the estate intended to be

conveyed, and that such estate is in law a joint tenancy. But this does not dispose of the question before us.

The estates and rights of the husband and wife were these. Each was entitled to the enjoyment, use and profits of an undivided half during his or her life with an absolute fee in the whole in case of surviving the other. (*Hiles* v. *Fisher, supra.*) The undivided half to the enjoyment, use and profits of which the husband was entitled during his life never passed into the possession of the wife until her husband's death, and, consequently, then became subject to that provision of the Tax Law which declares that a transfer tax shall be imposed when the transfer is of property made in consequence of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. (*Matter of Brandreth,* 169 N. Y. 437.)

I think the order of the Appellate Division and that of the Surrogate's Court should be reversed and the matter remitted to the Surrogate's Court, with directions to assess the transfer tax upon the value of one-half of the property in question.

COLLIN, J. (dissenting). In February, 1906, John C. Klatzl executed a deed conveying, in form, real estate owned by him to himself " and Mary Emma Klatzl, his wife, * * * as tenants of the entirety," and containing the ordinary covenants of warranty and quiet enjoyment. John C. Klatzl having died, the comptroller of the state asserted, for the purpose of the transfer tax, that the conveyance constituted the grantees owners, as tenants in common, of the granted estate, while the widow, Mary Emma Klatzl, claimed, on the other hand, that it constituted them tenants by the entirety. We are to determine the true operation and effect of the deed.

The common law ruled that a conveyance to two persons, who were then husband and wife, created and vested in them an ownership as tenants by the entirety.

The conveyance was treated as being to a unity and as creating an indivisible title or ownership. The rule was based on the doctrine of unity of person created by marriage.

The overwhelming weight of judicial decision within the United States, amounting indeed almost to unanimity, is that the rule is not abrogated — tenancy by the entirety is not abolished, by the various statutes generally denominated the married woman's statutes. We so held in the case of *Bertles* v. *Nunan* (92 N. Y. 152). It is unnecessary to repeat or reconsider the reasoning and conclusion of that case. They were satisfactory to us then and their accuracy and soundness have never been questioned. It is true that since our decision in that case other statutes of the class have been enacted (See Domestic Relations Law [Cons. Laws, ch. 14], §§ 51, 56, and the prior analogous statutes), but the conclusion it established is still the law. There is no statute which expressly or through legislative intention abolishes the title of tenancy by the entirety or annuls the common-law rule. As already stated, the legislative removal of disabilities and restraints of the wife incident to the unity of person and the bestowal on her of capabilities have not disrupted the unity. The common-law condition has been no further abrogated by the statutes than is to be understood from the unmistakable import of the language used in them. ·(*Bertles* v. *Nunan,* 92 N. Y. 152; *Markey* v. *County of Queens,* 154 N. Y. 675, 687.) With the judicial interpretation of the statutes considered in *Bertles* v. *Nunan* before them, it is clear that the legislature did not intend in the subsequent cognate statutes to change or affect our decision. Mere implication will not uphold a destruction of the common-law rule. Unity of person between a man and a woman is created by their marriage and continues while they are husband and wife. (*Stelz* v. *Shreck,* 128 N. Y. 263.) A grant or devise to them of real estate creates an estate by the

entirety, an estate held by them as one person under one title. The survivor, upon the death of the other, does not take a new acquisition, but holds under the original grant or devise, the estate being merely freed from participation by the other. There is no succession in or transfer of title.

We need not here attempt to determine whether the venerable doctrine that marriage constitutes husband and wife one person has its roots in the early ecclesiastical law of England or to what extent, if any, the legal rights, duties and disabilities of a wife evolved from the guardianship of the wife by the husband as held in the ruder and less law-governed ages. It is sufficient for the present discussion that the doctrine did not have its source in or did not result from an intent, purpose or custom to deprive or withhold from a wife civil or property rights. Indeed it may have arisen before individual property rights were clearly developed or firmly established. It describes and defines a status, having recognition in the law, which in its origin was independent of and not consequent upon the disabilities or restraints of married women. Rather is it true that in the common law those disabilities and restraints were predicated upon or incidental, although not essential, to the existence of the status. Thus the common law, while declaring unequivocally that husband and wife were one person, held also that they might own lands as tenants in common. (*Miner* v. *Brown*, 133 N. Y. 308; *McDermott* v. *French*, 15 N. J. Eq. 78; 1 Washburn on Real Property [6th ed.], p. 562; 4 Kent's Com. [14th ed.] p. 414.) The legislative removal of the disabilities or restraints resting upon, and recognition of rights or capabilities in the wife do not destroy the unity of person from which the tenancy by the entirety springs, because such unity was not caused by, did not arise from or rest upon the existence or the absence of those disabilities or restraints. It was of the persons of husband and wife, not necessarily of their properties.

The disabilities sprang from or were incidents of the unity. Statutes may remove or modify them and not destroy the unity. The right and power of the wife, given by legislative enactment, to own, possess and control a separate estate and business, to receive, transfer or devise property in her own name, to contract with and give and receive without the intervention of a trustee or third person conveyances to and from her husband, to partition and divide with him the estate owned in tenancy by the entirety, to testify and give evidence against him, have not shattered nor absorbed the common-law doctrine of the unity of the person of husband and wife, or its offspring, the estate of tenancy by the entirety. Property and civil rights and responsibilities may be disunited and independent between them, but conjugal responsibilities, rights, duties and authority remain. (*Bertles* v. *Nunan*, 92 N. Y. 152; *Diver* v. *Diver*, 56 Penn. St. 106; *Stelz* v. *Shreck*, 128 N. Y. 263; *Hiles* v. *Fisher*, 144 N. Y. 306; *Grosser* v. *City of Rochester*, 148 N. Y. 235; *De Brauwere* v. *De Brauwere*, 203 N. Y. 460; *Baker* v. *Stewart*, 40 Kans. 442.)

When the conveyance here under consideration was executed, the grantees were husband and wife. A conveyance to them would vest in them an estate of tenancy by the entirety, unless it otherwise expressly stipulated. The statutes (Laws of 1896, ch. 272, § 26; Laws of 1892, ch. 594; Laws of 1887, ch. 537, § 1; Laws of 1880, ch. 472, § 1; Domestic Relations Law, § 56) which authorized a conveyance between husband and wife did not disintegrate the unity of their persons created by the marital relation; no more did the conveyance by the husband made under the statutory empowerment and authority. If the statute which authorized the conveyance did not sunder the unity, the conveyance it authorized did not. They were the grantees therein and the legal unity of persons receiving the indivisible, inseverable title to the property conveyed. There existed the legal unity which

characterizes the relation of husband and wife and the conveyance to the husband and wife. The estate of tenancy by the entirety neither has nor requires another component. While there was the unity of person which begets and sustains the estate of tenancy by the entirety, under the statute each was wholly free, by contract, gift, grant or devise, to vest any legal estate in themselves or the other. In *Winter* v. *Winter* (191 N. Y. 462, 472) we said: "The intervention of a trustee or third person is no longer necessary for the conveyance of real estate, or the partition thereof with bar to dower and curtesy. (Dom. Rel. Law, § 26.) In view of the legislation which permits husbands and wives to contract directly with each other, any contract for separation and support, which they could formerly have made by means of a trustee, they can now make without one. The only reason for resorting to a trustee was the ancient rule that a husband and wife were one person, but both the reason and the rule ceased to exist when the common law was supplanted by statute. A wife is now permitted to contract with the freedom of a *feme sole* and by the express command of the legislature she can at last contract even with her husband the same as if they were unmarried, except that they cannot alter or dissolve the marriage and she cannot release him from his obligation to support her. The old formality was necessary when the wife had no legal existence apart from her husband, who in contracting with her simply contracted with himself according to the theory of the law. That theory has been overthrown by statute and the opposite theory substituted, so that there is no longer any necessity for a trustee."

In the jurisdictions in which the law recognizes tenancy by the entirety in personal property, of which this state is not one (*Matter of Albrecht*, 136 N. Y. 91), an obligation to pay to the husband and wife moneys belonging to and loaned by the husband to the obligor

vests them with such estate. (*Klenke's Estate* [*No. 1*], 210 Pa. St. 572; *Brewer* v. *Bowersox*, 92 Md. 567; *Baker* v. *Baker*, 123 Md. 32. See, also, *Augsbury* v. *Shurtliff*, 180 N. Y. 138.)

The argument might be made that the conveyance was in force and effect to the wife alone and in fee simple, because a grantor cannot convey directly to himself, and it is well settled that where one of several grantees, for any reason, is incapable of taking, one or others capable of taking shall take the whole. (*Dowset* v. *Sweet*, 1 Ambler's Rep. 175; *Humphrey* v. *Tayleur*, 1 Ambler's Rep. 136; *McCord* v. *Bright*, 44 Ind. App. 275; *Cameron* v. *Steves*, 9 N. Brunswick, 141.) Without assenting to such rule in its full substance and scope and holding the opinion that it would have precluded the grantor from a tenancy in common with his wife, I think it is not apposite to the present conveyance. The ownership it devolved was in both grantees as one person. They, while both were living, held the estate as one owner under one title and upon the death of the husband the wife was that owner under that title. Upon the vesting of an estate by entireties, both tenants, by reason of the unity of their person by marriage, become seized of the whole estate, and neither is seized of any divisible part thereof; and, therefore, upon the death of one the survivor, being already seized of the whole, can acquire no new or additional interest by virtue of his survivorship. (*Hiles* v. *Fisher*, 144 N. Y. 306.) The husband did not convey to himself, but to a legal unity or entity which was the consolidation of himself and another.

Moreover, the conveyance clearly and expressly stated the intention of the parties to be that it should vest in the grantees an estate by entireties. To construe it as though the wife were the sole grantee or as conveying to tenants in common would be a judicial conveyance of the property of the grantor in legal effect contrary to his

expressed intention. In the absence of a rule of law compelling such construction, the intention of the grantor should be given effect. (*Green* v. *Cannady*, 77 So. Car. 193; *West* v. *McCullough*, 123 App. Div. 846.) Estates by the entirety and the creation of them by a conveyance to a husband and his wife are clearly defined and fixed rules of property in our law, which, until legislation, direct and unequivocal, interdicts, should be observed and enforced.

The order should be affirmed, with costs.

CUDDEBACK and HOGAN, JJ., concur with SEABURY, J., and WILLARD BARTLETT, Ch. J., concurs in result in a separate opinion; HISCOCK and CARDOZO, JJ., concur with COLLIN, J.

Orders reversed, etc.