APPEAL OF GEORGE R. DYER, H. KIERSTEDE HUDSON AND T. HENDRY WALTER, EXECUTORS OF ESTATE OF CHARLES I. HUDSON.

Docket No. 3351. Promulgated November 30, 1926.

Decedent and wife were tenants by the entirety of lands conveyed to them in 1909. Decedent died November 15, 1921, a resident of the State of New York wherein the lands were situate. Under the laws of the State of New York there was not a transfer of an estate to the surviving spouse on the death of the decedent in such lands, and the inclusion of their value as a part of the gross estate of the decedent, under the provisions of the Revenue Act of 1918, was without authority in law. *Appeal of Susie M. Root,* 5 B. T. A. 696.

*John Godfrey Saxe, Esq.,* for the petitioners.
*J. F. Greaney, Esq.,* for the Commissioner.

Appeal by the executors of the estate of Charles I. Hudson, deceased, from the determination of a deficiency in estate tax proposed to be assessed by the Commissioner in the amount of $43,121.72 under the provisions of the Revenue Act of 1918. The question to be decided is whether, under that statute, decedent's contribution of $480,000 to the purchase price of certain real estate, conveyed to decedent and his wife as tenants by the entirety, should be included as a part of the gross estate of the decedent for purposes of such tax.

FINDINGS OF FACT.

Charles I. Hudson died testate on November 15, 1921, a resident of the City, County and State of New York. His will was thereafter duly admitted to probate by the Surrogate's Court of the County of New York; letters testamentary thereon were duly issued to the petitioners as executors, who duly qualified as such and since that time have been, and are still, acting as such executors.

Long prior to the dates hereinafter mentioned, on some date prior to May 6, 1878, Charles I. Hudson and Sara E. K. Hudson intermarried, and at all times hereinafter mentioned down to the date of the decedent's death were man and wife.

On February 26, 1906, Jane W. Underhill and another conveyed a certain parcel of land to " Charles I. Hudson and Sara E. K. Hudson, his wife * * * To have and to hold the above granted

premises unto the said parties of the second part, their heirs and assigns forever, as tenants by the entirety." The land thus conveyed was situate at East Norwich, Nassau County, Long Island, and comprised 48.877 acres.

On February 26, 1906, John C. Martling and others conveyed a certain parcel of land to " Charles I. Hudson and Sara E. K. Hudson, his wife   *   *   *   To have and to hold the above granted premises unto the said parties of the second part their heirs and assigns forever as tenants by the entirety." The land thus conveyed was situate at East Norwich, Nassau County, Long Island, and comprised 165.127 acres.

On February 28, 1906, Vincent M. Lewis and another conveyed a certain parcel of land to " Charles I. Hudson and Sara E. K. Hudson his wife   *   *   *   To have and to hold the above granted premises unto the said parties of the second part their heirs and assigns forever as tenants by the entirety." The land thus conveyed was situate at East Norwich, Nassau County, Long Island, and comprised 57.805 acres.

The three foregoing deeds were duly recorded in the office of the Clerk of the County of Nassau, New York, on March 5, 1906.

On March 30, 1909, Sarah E. Vernon conveyed a certain parcel of land to " Charles I. Hudson and Sara E. K. Hudson, his wife   *   *   *   To have and to hold, the above granted premises unto the said parties of the second part as tenants by the entirety, their heirs and assigns forever." The land thus conveyed was situate at East Norwich, Nassau County, Long Island, and comprised 53.74 acres. This deed of conveyance was duly recorded in the office of the Clerk of the County of Nassau, New York, on April 2, 1909.

Charles I. Hudson contributed $480,000 to the purchase price of the lands hereinabove referred to. It is agreed by the parties to this proceeding that the value of the decedent's contribution toward the purchase of this property was, at the date of the death of the decedent, $480,000. The lands in question were held by decedent and his wife under the above conveyances until the death of the decedent on November 15, 1921.

At the time of his death, Charles I. Hudson left surviving him his widow, Sara E. K. Hudson, who, on April 14, 1922, conveyed the lands above referred to, by deed of conveyance executed by Sara E. K. Hudson as sole grantor, to Gustavia A. Senff; said deed being duly recorded in the office of the Clerk of the County of Nassau, New York, on April 18, 1922. As security for a balance of the purchase price of the said lands, the grantee, Gustavia A. Senff, executed on April 14, 1922, a purchase money mortgage to Sara E. K. Hudson in the amount of $335,000, which said mortgage was duly

recorded in the office of the Clerk of Nassau County, New York, on April 18, 1922.

The executors duly reported the lands in question to the New York State Tax Board as owned by the decedent and Sara E. K. Hudson as tenants by the entirety. By orders dated January 15 and 18, 1924, the Surrogate's Court in and for the County of New York appointed a referee to examine into the necessary jurisdictional facts, to examine the accounts of the executors, to hear and determine all questions arising upon the settlement of such accounts and to make report to the court. The referee held hearings, took testimony, and filed with the court his report on August 22, 1924. The matter came on for hearing before the Surrogate's Court and on February 6, 1925, the court entered a written decision confirming and approving the referee's reports in all particulars material to this issue, and on April 8, 1925, the court entered its decree making adjudication of the matters before it. The portion of the decree pertinent to this issue is as follows:

And it appearing that the said Executors have fully accounted for all of the moneys and property of the said Estate which have come into their hands as such Executors, and their account having been adjusted by the said Surrogate, and a summary statement of the same having been made as above and herewith recorded; and it further appearing that the estate at the time of the death of the testator had and still has no interest in the real estate theretofore owned by the decedent and his wife as tenants by the entirety, and the account as summarized above which includes therein no real property, having been hereby approved and settled as the only property properly accountable for in this estate by the said Executors; it is

FURTHER ORDERED, ADJUDGED AND DECREED:

IV. That the said account be, and the same is, in all respects, judicially settled and allowed as filed and adjusted * * *.

On audit of the estate-tax return filed by the executors, the Commissioner determined that there should be included in the value of the gross estate of the decedent the value at the time of his death of the interest of the decedent in the lands held by decedent and his wife as tenants by the entirety. He determined the value of the decedent's interest in such lands at the date of his death to be $480,000. The action of the Commissioner in this respect was predicated on the provisions of sections 401 and 402 of the Revenue Act of 1918. Accordingly, he notified the petitioners of his determination of a deficiency in estate tax of $43,121.72. From that notice the petitioners appealed to this Board.

OPINION.

KORNER, *Chairman*: The issue presented for determination in this proceeding is substantially the same as that presented in *Appeal*

*of Susie M. Root*, 5 B. T. A. 696, decided this day. The salient point of difference, aside from the matter of the jurisdiction of the parties and the subject matter, is that, in that case, the estate by the entirety was created in the grantees subsequent to the date of the enactment of the statute controlling at the date of the death of the decedent, whereas, in the instant case, such estate was created prior to the enactment of the statute controlling the subject matter of this controversy. It will be noted that the *Root* case arose under the provisions of the Revenue Act of 1921, while the instant proceeding arises under the provisions of the Revenue Act of 1918. But, since the provisions of the two acts are the same in so far as concerns the matters involved in the two cases, this difference is not of importance.

The petition alleges and the answer admits that Charles I. Hudson and his wife were seized of the premises in question as tenants by the entirety down to the date of the former's death. This is admitted as a fact, but, in our opinion, it is a legal conclusion which is fully borne out by the authorities. *Hunt* v. *Blackburn*, 128 U. S. 464, 469; *Bertles* v. *Nunan*, 92 N. Y. 152, 156; *Matter of Klatzl*, 216 N. Y. 83; 110 N. E. 181; *Matter of Lyon*, 233 N. Y. 208; 135 N. E. 247; *Matter of Dunn*, 236 N. Y. 461; 141 N. E. 915. In view of the decisions of the courts of New York, it is not open to question that the doctrine of estates by the entirety obtains in that jurisdiction with all the legal consequences incident thereto.

In *Matter of Klatzl, supra*, the Court of Appeals held (p. 85, 87):

At common law a conveyance by a third person to husband and wife creates a tenancy by entirety. Such an estate is founded upon the ancient principle of the common law which regarded the husband and wife as one person. (Blackstone's Comm. book I, p. 442; Bl. Comm. book II, p. 182; 2 Kent's Comm. p. 132.) Neither the provision of the Revised Statutes that "every estate granted or devised to two or more persons, in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenancy" (3 R. S. [7th ed.] 2179), nor the legislation that has been enacted in reference to the rights and property of married women and permitting husband and wife to contract directly with one another, preclude the creation of a tenancy by entirety. After some fluctuation of opinion (*Meeker* v. *Wright*, 76 N. Y. 262) it is now settled that this tenancy is still recognized in the jurisprudence of this state.

In 1916, in an attempt to overrule the decision in the *Klatzl* case (decided October, 1915), the New York Legislature amended the Tax Law in respect to taxable transfers and attempted to include in the gross taxable estate property held "in the joint names of two or more persons, or as tenants by the entirety." The act was retroactive, and attempted to tax such an estate, whenever created, provided death should occur after 1916. Laws of 1916, chap. 323, sec. 83, p. 866, amending the Tax Law, sec. 220, subdiv. 7.

In *Matter of Lyon*, *supra*, the Court of Appeals construed this Act of 1916 and held that this attempt to tax estates by the entirety created before 1916 was fruitless, and that such estates could not be taxed. Thus, the Court of Appeals unanimously held (233 N. Y. 211, 212):

When, on July 31st, 1908, a house and lot was conveyed to Edmund Lyon and to Carolyn, his wife, as tenants by the entirety they became seized of an estate having well-recognized attributes. Whatever the original reasoning upon which this estate was based, the rules with regard to it had long become a part of the law of real property consistently enforced in New York. (*Matter of Klatzl*, 216 N. Y. 83.) Husband and wife were not joint tenants. One did not acquire the rights and property of the other by survivorship. The fee was indivisible. As an entirety it was vested in both. For this purpose they were considered one and not two. On the death of either the fee vested in the other, not because there was a transfer of any part of the estate, but because the survivor was the representative of the single ownership. * * *

Since 1916 the statute has been altered. (Cons. Laws, ch. 60, section 220, subd. 7.) Where there is a joint tenancy or a tenancy by the entirety, the right of the survivor to the immediate ownership and enjoyment of the property shall be deemed a taxable transfer " in the same manner as though the whole property * * * belonged absolutely to the deceased tenant by the entirety (or) joint tenant * * * and had been bequeathed to the " survivor by the deceased. This means that the tax is to be imposed upon the entire estate held by the joint tenants or by the tenants by the entirety as if the whole had passed by will. (*Matter of Dolbeer*, 226 N. Y. 623.) The act is also retroactive and is an endeavor to tax such estate whenever created provided the death occurs after 1916. (*Matter of McKelway*, 221 N. Y. 15.)

Whatever power the legislature may have with regard to such estates later created does not extend to those already vested before the adoption of the amendment. (*Matter of Pell*, 171 N. Y. 48.) This estate by the entirety with all its incidents was vested in Mr. and Mrs. Lyon in 1910. What was then acquired may not subsequently be diminished by a tax upon that acquisition. As there was no transfer after 1916 there can be no tax. Mrs. Lyon now has what she had in 1910, no more and no less. (*Matter of McKelway*, *supra*.)

The distinction is brought out in *Matter of Dunn*, *supra*. There husband and wife, as tenants by the entirety, acquired certain real estate in 1915 and certain other real estate in 1919 and 1920. The New York Act was passed in 1916 and the husband died in 1921. The Court of Appeals held the property acquired in 1915 was not affected by the Act of 1916, and was not liable to tax, saying (236 N. Y. 464):

Patrick J. Dunn and his wife in 1915, prior to the amendment of the Tax Law, acquired real estate as tenants by the entirety. Such property was not affected by the amendment of 1916, nor has it been considered in the appraisal made for the reason that under the statute as it then read, the surviving tenant was entitled to the immediate ownership, possession and enjoyment of the property upon the death of the co-tenant. .

In the last cited case the court held that the property to which title was taken in 1919 and 1920 was burdened with a transfer tax.

57694°—27——49

We are not here concerned, however, with a situation to which such a ruling would be applicable. In the instant case title to the property in question was taken by the grantees in 1909 and the death of the husband occurred in 1921.

Pursuant to the laws of New York, the Surrogate's Court of that State rendered a decree specifically adjudicating that the estate at the time of decedent's death had and still has no interest in the real estate theretofore owned by the decedent and his wife as tenants by the entirety.

In view of what has been said, we conclude that on the death of Charles I. Hudson there was no transfer of any interest or estate from him or his estate either to his wife or to his executors, but that his interest in the lands in question ceased and terminated—became annihilated.

With the foregoing as a premise, we conclude, as we did in *Appeal of Susie M. Root, supra,* and by the same process of reasoning, that no estate tax is imposed by the Revenue Act of 1918 in respect of the value of the lands here in question, and that the deficiency proposed here is not a correct or proper deficiency.

It was alleged by the petitioners in their brief that, if the issue in this proceeding be resolved in their favor, there would be a resultant overpayment of estate taxes in the amount of $7,243.74. No proof was offered on this point nor is the matter referred to in the record other than the statement in brief just referred to. The statutory deficiency notice from which this appeal is taken is not before the Board, nor is there any showing as to the method of computation by which the Commissioner arrived at his determination. We therefore make no finding and offer no comment on that phase of the matter.

*Judgment will be entered for the petitioners.*

Love dissents.