PENNSYLVANIA COMPANY FOR INSURANCES ON LIVES AND GRANTING ANNUITIES ET AL., EXECUTORS, ESTATE OF LOUIS S. BAUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20263.   Promulgated November 3, 1930.

*Theodore B. Benson, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, for the respondent.

OPINION.

PHILLIPS: The respondent included in the gross estate the value of certain property which had been transferred by the decedent to his wife prior to his death. Some of this property had been trans-

ferred to the wife as sole owner and other transfers were to the decedent and his wife. The respondent urges that all of these gifts and transfers were made in contemplation of death. Petitioner does not contend that those transfers which were made by the decedent within two years prior to his death were not made in contemplation of death, and the action of the respondent is sustained as to those items, but it is contended that the transfers which were made more than two years prior to the death of the decedent were not made in contemplation of death and should not be included in the gross estate of decedent.

The decedent first became aware of his diabetic condition when he was 38 years old. He died when he was 61—23 years thereafter. In 1916, seven years before his death, his physicians' records show him to have had incipient diabetes. In 1920 and 1921, the years in which the gifts and transfers here in question were made, his condition was practically unchanged; his heart and lungs were good, his blood pressure was good, his abdomen was negative, his skin was clear, and his weight was approximately normal. He was actively engaged in business and attended to it daily, even making regular trips of approximately six weeks in the spring and fall of each year selling goods to the trade. He spent the summer of 1921 at a hotel in Maine, returning home in an automobile and thereafter regularly attended to his business, going to New York and selling goods to the buyers who came to the market there. The treatment for his disease consisted largely in dieting and he had been on a diet more or less constantly, at least since 1916. In the spring of 1922 he was much improved and a more liberal diet was allowed by his physician. The evidence does not indicate that during the years 1920 and 1921 he was apprehensive of death in the near future. His death, on December 12, 1923, was caused, in the opinion of his physician, from a uremic condition, which developed in that year, and not primarily from diabetes. Under all the facts of the case, we are of the opinion that the transfers and gifts which were made more than two years prior to his death were not made in contemplation of death.

Among the transfers of decedent's property made more than two years prior to his death were certain stocks and securities which were issued or transferred to the decedent and his wife. There is no evidence that any of the wife's property or money was given in consideration for these stocks and securities. Under the laws of Pennsylvania this property was held by the decedent and his wife as tenants by the entirety. *Bramberry's Estate*, 156 Pa. 628; 22 L. R. A. 594; 27 Atl. 405; *Parry's Estate*, 188 Pa. 33; 41 Atl. 448; *Klenke's Estate*, 210 Pa. 572; 60 Atl. 166, *Sloan's Estate*, 254 Pa. 346;

98 Atl. 966. The Revenue Act of 1921, section 402, provides that in determining the value of the gross estate of the decedent there shall be included all property:

(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth:   *   *   *.

The 1921 Act did not provide, as did the Revenue Act of 1924, which we had before us in *Ada M. Slocum, Executrix*, 21 B. T. A. 169, and *Commerce Union Trust Co., Executor*, 21 B. T. A. 174, that such estates should be included whenever created. Thus the question arises whether the estates by the entireties created before the effective date of the Revenue Act of 1921 should be included. *Shwab* v. *Doyle*, 258 U. S. 529; *Union Trust Co.* v. *Doyle*, 258 U. S. 537; *Levy* v. *Wardell*, 258 U. S. 542; and *Knox* v. *McElligott*, 258 U. S. 546. These cases were all decided on the same day, *Shwab* v. *Doyle* being used as the vehicle for the opinion laying down the principle which governed the decision of the others. In that case the Government sought, under the Revenue Act of 1916, to include in the gross estate of the decedent the value of certain property which he had transferred during his life at a time when there was no Federal estate tax. The statute provided for a tax upon the estate of the decedent " to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of   *   *   *   death." A jury had found that the transfer had been made in contemplation of death. The court said:

█ The initial admonition is that laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared. 1 Kent, 455; *Eidman* v. *Martinez*, 184 U. S. 578, 22 Sup. Ct. 515; 46 L. Ed. 697; *White* v. *United States*, 191 U. S. 545, 24 Sup. Ct. 171, 48 L. Ed. 295; *Gould* v. *Gould*, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211; Story, Const. Sec. 1398. The comment of Story is:

" Retrospective laws are, indeed, generally unjust, and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact."

There is absolute prohibition against them when their purpose is punitive; they then being denominated ex post facto laws. It is the sense of the situation that that which impels prohibition in such case exacts clearness of declaration when burdens are imposed upon completed and remote transactions, or consequences given to them of which there could have been no foresight or contemplation when they were designed and consummated.

█ The Act of September 8, 1916, is within the condemnation.

It was held that the property transferred by decedent prior to the enactment of the Act was not to be included as a part of his estate. In the *Union Trust Co.* case the same conclusion was reached where decedent, in 1901, created a trust, the income to be paid her during her lifetime, with remainder over. The Government had sought to tax the property on the ground that there was a transfer to take effect at death. *Levy* v. *Wardell* involved a similar situation and a like conclusion. In *Knox* v. *McElligott*, it appeared that the decedent, Kissam, was the owner of certain bonds and mortgages and corporate bonds which he conveyed to a third person who, shortly thereafter, conveyed them to Kissam and his wife as joint tenants. In 1917 Kissam died, leaving his wife surviving. His executor made a return of decedent's estate in which he included one-half of the value of the jointly owned property. The Commissioner added to the estate the value of the other one-half interest and assessed and collected an additional tax which the executor sued to recover. The court quotes with approval the opinion of the District Court which points out that " at the time the statute was passed Cornelia Kissam's interest belonged to her," and a further statement:

From the structure of the act to say that the measure of the tax is the extent of the interest of both joint tenants is, in effect, to say that a tax will be laid on the interest of Cornelia in respect of which Jonas had in his lifetime no longer either title or control.

The court then points out that the case involves the same question as that decided in *Shwab* v. *Doyle*, *supra*, and reinstates the decision of the District Court allowing recovery of the additional tax.

To appreciate the limitations of this decision, it must be pointed out that New York does not recognize tenancies by the entirety in personal property, that the conveyance in question was to husband and wife as joint tenants, that either joint tenant may dispose of a one-half interest during his lifetime, thereby creating a tenancy in common, and that it was admitted that one-half of the jointly owned property passed as a part of decedent's estate, the only controversy being with respect to the other half. For all practical purposes a joint tenancy creates a one-half interest in each of the parties which they may dispose of at will, provided that if the estate continues until the death of one the survivor takes the whole. The distinction between such an estate and one held by the entireties, where neither may alone dispose of any interest, is evident. See *Tyler* v. *United States*, 281 U. S. 497.

Examining *Shwab* v. *Doyle* and associated cases, *supra*, we find that in each case that which the Government sought to include as a part of the estate of the decedent was property which had passed from his custody and control at a time when there was no Federal

estate tax. Death played no part in the transfer. The attempt to include such property as a part of the estate was, as pointed out in *Shwab* v. *Doyle*, an attempt to impose a burden upon " completed and remote transactions." The court subsequently went further and held that estate taxes could not be imposed in such cases although the transfer was made after the effective date of the law, where not made in contemplation of death or to evade the statute. *Nichols* v. *Coolidge*, 274 U. S. 531; *May* v. *Heiner*, 281 U. S. 238. To the same effect are *James Duggan, Executor*, 8 B. T. A. 482, and *Edgar M. Morseman, Jr., Administrator*, 14 B. T. A. 108. See also *Untermeyer* v. *Anderson*, 276 U. S. 440, and *Lewellyn* v. *Frick*, 268 U. S. 238. But a contrary conclusion was reached where the transfer, although made at a time when there was no taxing statute, was not completed until decedent's death because he retained power of revocation. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. See also *Chase National Bank* v. *United States*, 278 U. S. 327. And in *John A. Loetscher*, 14 B. T. A. 228, and *Helen Latham, Administratrix*, 16 B. T. A. 48, it was held that property transferred in contemplation of death should be included in the gross estate, although the transfer was made before the enactment of the statute levying the tax, but at the time when a prior act of similar import was in effect.

The question presented with respect to the tenancies by the entirety set up before the enactment of the Revenue Act of 1921 is whether the transfer of the husband's property to the wife was completed at the time the tenancy was so set up or at the time of death. If it was the death which completed the transfer of this property to the wife, a tax imposed at death is not retroactive and our decision must be governed by *Reinecke* v. *Northern Trust Co.*, *supra*, and *Chase National Bank* v. *United States*, *supra*. If the transfer is a " completed transaction " (*Shwab* v. *Doyle*) so that decedent " had in his lifetime no longer either title or control " (*Knox* v. *McElligott*), then our decision is controlled by the decisions in the *Shwab* and *Knox* cases. As we read the decision in *Tyler* v. *United States, supra*, it is based squarely and solely upon the ground that there was a transfer at death, not in the strict sense of that word, but in the sense that the death was the generating source of important and definite accessions to the property rights of the surviving tenant; that the death passed into her hands property which had originally belonged to the decedent and which she had only then become entitled to hold and enjoy absolutely as her own. Had the court been of the opinion that the deed as tenants in the entireties was sufficient to transfer the property to the wife, the case would have been similar to *May* v. *Heiner, supra*. But since both the deed and the death were required to effect the transfer of the property

from the original ownership of the decedent to the sole ownership of his wife, it would seem that, as in *Reinecke* v. *Northern Trust Co.*, and *Chase National Bank* v. *United States*, *supra*, the transfer was not complete until the death. If this be so, there is no retroactive application of the statute merely because the tenancies were created prior to the effective date of the act which levies the tax.

There are decisions of the Board to the contrary. They are based upon *Nichols* v. *Coolidge* and the theory that the deed transferred the property to the surviving tenant; that nothing was transferred by the death. In view of the decision in the *Tyler* case, these decisions can no longer be regarded as correct.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL, dissenting: The majority opinion is placed squarely on the Board's interpretation of the case of *Tyler* v. *United States*, 281 U. S. 497. The facts in that case, however, were different. The estates by the entireties before the court in the *Tyler* case were created after the passage of the effective revenue act. The estates before the Board in the instant case were created prior to the passage of the effective act. As I understand the reasoning of the majority opinion, it is that there was a transfer at death, though not in the strict sense of that word, and that as both the instrument creating the estate by the entirety and death were required to effect the transfer of property from the original ownership of the decedent to the sole ownership of his wife, the transfer was not complete until death, and that as so construed the act is not retroactive and the case falls within the principle of *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and *Chase National Bank* v. *United States*, 278 U. S. 327. With this view I can not agree.

The sole question before the court in the *Tyler* case was in respect of the constitutional validity of the statute, the attack being made upon two grounds: First, that the tax was an unapportioned, direct one, and, second, that the tax violated the due process clause of the Fifth Amendment. In addressing itself to the first contention, the court said the question is not whether there has been a transfer in the strict sense of that word, but whether death has brought into being or ripened for the survivor property rights of such character as to make appropriate the imposition of a tax to be measured in whole or in part by the value of such rights. The court concludes that the death of one of the parties to the tenancy by the entirety became the generating source of important and definite accessions to the property rights of the other, and that

these circumstances, together with the fact that no part of the property originally had belonged to the wife, are sufficient to make valid the inclusion of the property in the gross estate, and in that view the tax is indirect. The court held the attack on the second ground to be without merit, as the right to tax in the manner provided by the statute was within the power of Congress and the challenge becomes not to the power, but the abuse of it. The court did recognize, however, in the *Tyler* case, and this is important, that, even though economic benefits passing at death may be a proper occasion for the imposition of a tax, still, in so far as title and property rights might be concerned, the court was bound by State rules of property. The States in which tenancies by the entireties obtain follow the common law idea that both tenants take title from the deed of conveyance to them and not by reason of survivorship. See *Matter of Klatzl*, 216 N. Y. 83; 110 N. E. 181; *Beihl* v. *Martin*, 263 Pa. 519; 84 Atl. 953.

The property rights of the parties having become fixed by reason of the original instrument creating the estate, and that act having been fully consummated before the taxing statute was passed, there was no retreat open to decedent. The arbitrariness of a tax as measured under the Fifth Amendment lies in imposing an unexpected levy on an antecedent transaction by a taxpayer with no opportunity on his part to change his condition and put himself in *status quo*. *Untermeyer* v. *Anderson*, 276 U. S. 440.

When the decedent used his funds to create a tenancy by the entirety, he, for all practical purposes, made a gift as fully as if made outright. He no longer had control over the property; he could neither recall any portion of it nor convey it. That Congress can not tax a complete gift made before the enactment of the taxing act (and not made in contemplation of death) is established. *Nichols* v. *Coolidge*, 274 U. S. 531; *Untermeyer* v. *Anderson, supra*. These cases proceed upon the theory that an attempt to tax completed transactions is arbitrary and capricious and violates the due process clause of the Fifth Amendment. The *Untermeyer* case distinctly points out that a "taxpayer may justly demand to know when and how he becomes liable for taxes" and even though the gift was made while the revenue bill attempting to tax it was pending in Congress, "he ought not to be required to guess the outcome."

Whether or not a particular measure is invalid solely because it is retroactive, the Supreme Court has consistently placed its stamp of disapproval on retroactive construction of taxing statutes, save in cases where no other construction was open. *Shwab* v. *Doyle*, 258 U. S. 529; *Frick* v. *Lewellyn*, 268 U. S. 238; *Levy* v. *Wardell*,

258 U. S. 542. As Mr. Justice Holmes puts it in *Frick* v. *Lewellyn*, "Not only are such doubts avoided by construing the statute as referring only to transactions taking place after it was passed, but the general principle 'that laws are not to be considered as applying to cases which arose before their passage' is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways."

The *Chase National Bank* and *Northern Trust Co.* cases, relied on in the majority opinion, are not controlling. While, as pointed out in the *Tyler* case, the language of those cases constitutes helpful aid, they are not decisive of the question arising out of entirety estates. In the *Chase National Bank* case the decedent took out policies of insurance on his life after the effective date of the Revenue Act of 1921 and died while that act was still in effect. In the suit to recover the tax resulting from including the proceeds of such policies in decedent's estate, it was claimed, and conceded by the Supreme Court, "that the interest of the beneficiaries in the insurance policies effected by decedent 'vested' in them before his death." This, however, was held not to be controlling, the court saying:

> But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them.

> \*     \*     \*     \*     \*     \*     \*

> A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, *Cohen* v. *Samuels*, 245 U. S. 50; 38 S. Ct. 36; 62 L. Ed. 143 (See *Burlingham* v. *Crouse*, 228 U. S. 459, 33 S. Ct. 564; 57 L. Ed. 920; 46 L. R. A. [N. S.] 148), and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, Domestic Relations Law, N. Y. (chapter 14, Consol. Laws), §52; *Kittel* v. *Domeyer*, 175 N. Y. 205; 67 N. E. 433; *Guardian Trust Co.* v *Straus*, 139 App. Div. 884; 123 N. Y. S. 852, affirmed 201 N. Y. 546; 95 N. E. 1129, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

After referring to *Saltonstall* v. *Saltonstall*, 276 U. S. 260, to the effect that the freeing of a remainder interest from the possibility of the exercise of a power of disposition was the appropriate subject of a succession tax, the opinion in the *Chase* case proceeds as follows:

We think that the rule applied in *Saltonstall* v. *Saltonstall*, supra, to a succession tax is equally applicable to a transfer tax where, as here, the power of *disposition is reserved exclusively* to *the transferor* for his own benefit. Such an outstanding power *residing exclusively in a donor to recall a gift after it is made* is a limitation on the gift *which makes it incomplete as to the donor* as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers. (Italics ours.)

In the *Northern Trust* case, the instruments creating two trusts which it was held should be included in the gross estate, reserved to the settlor alone the power of revocation, upon the exercise of which the trustee was required to return the trust corpus to him. It was argued that because these trusts were created in 1903 and 1910, the taxing statute if applied to them would be unconstitutional and void, because retroactive. The court rejected this contention saying:

\* \* \* *A transfer made subject to a power of revocation in the transferor,* terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death follows the passage of the statute. (Italics ours.)

The situation is different in tenancies by the entirety and joint tenancies, for, as pointed out above, the gift creates property rights which are beyond recall. This is recognized in *Knox* v. *McElligott*, 258 U. S. 546, where a joint estate was created in 1912 and upon the death of one of the decedents in 1917, one-half of the jointly owned property was returned as estate of the decedent. The Commissioner added the other half to the value of the estate and asserted a tax thereon. The Supreme Court, in holding that the Commissioner erred, quoted from the decision of the District Court as follows:

At the time the statute was passed Cornelia Kissam's interest belonged to her \* \* \* From the structure of the Act to say that the measure of the tax is the extent of the interest of both joint tenants is, in effect, to say that a tax will be laid on the interest of Cornelia in respect of which Jonas had in his lifetime no longer either title or control.

To the same effect are decisions of the New York courts interpreting the State transfer tax act which, like the Federal estate tax act, imposes a tax on transfers and provides that in the case of property held jointly or in entirety, " upon the death of one of such persons the right of the surviving tenant \* \* \* shall be deemed a taxable transfer." The courts of New York have consistently held that the statute was unconstitutional and violated the Fourteenth Amendment in so far as it attempted to tax such tenancies created prior to the passage of the act. See *In re Lyon's Estate*, 233 N. Y. 208; 135 N. E. 247; *In re McKelway's Estate*, 221 N. Y. 15; 116 N. E. 348; *In re Carnegie's Estate*, 203 App. Div. 91; 196 N. Y. S. 502.

The *Tyler* case does not decide what should be done with the survivor's share of the tenancy by the entirety created *before the passage* of the taxing statute, but the Supreme Court has decided in *Knox* v. *McElligott* that such share, in the case of joint tenancies created before September 8, 1916, should not be included in the decedent's estate, and that decision is not overruled by the *Tyler* decision. The only substantial difference between these two kinds of tenancies is that a tenancy by the entirety can not be severed by the act of one tenant alone, as is true of a joint tenancy, but requires the joint action of both tenants. *In re Klatzl's Estate, supra.* In both kinds of estates each tenant has property rights so completely vested that they can not be destroyed by any act of the other. The Supreme Court in the *Tyler* case recognized the existence of such rights as determined by State law, and held, not that any title passed by reason of death, but that because of the death of one tenant the survivor's rights to use, enjoy and dispose of the property were relieved of the restrictions thereon during the existence of the tenancy and that thus the survivor's property rights were enlarged. There is nothing invalid in taxing this shifting of economic benefits because it occurred *after* Congress had enacted that such a transaction would be subject to tax. The decision was limited to tenancies created after the passage of the taxing acts, and, as said in the opinion, " the evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property." Obviously, one can not be charged with attempting to avoid a tax that was not in existence when he created the estate or made the gift.

It is also interesting to consider the five trusts in *Northern Trust Co.* that the court refused to include in the gross estate of the decedent. In these cases the creator of the trusts reserved no power to change the trusts except with the acquiescence of the beneficiary whose interest the court says was adverse, and " the shifting of the economic interest of the trust property which was the subject of the tax was thus complete as soon as the trust was made." The court in disposing of this feature of the case stated that sections 401 and 402, when read together, indicate no purpose to tax completed gifts made by the donor in his lifetime not in contemplation of death where he has retained no control, possession or enjoyment, and that the provision in section 402 (c) which includes transfers to take effect in possession or enjoyment at or after his death includes only those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. It was the ability of the decedent to place himself in *status quo* which caused the court

to include the first two trusts, and the fact that all effective control had been lost in the case of the other five trusts which necessitated their exclusion. And so with entireties. All control was lost by the original instrument. I again repeat that it is the creation of the estate by the entirety that determines the right of the parties and by local law all the property rights arise by reason of that instrument and through it. When the husband used his money to create an estate by the entirety he then and there made a gift. He could not withdraw it by his own act as in *Chase National Bank* and *Northern Trust Co.* The fact that economic benefits passed later and this occasion may be used to impose a tax does not change the fact that the act of making an irrevocable gift had theretofore taken place. His inability to recall the transaction makes it, as to him, as complete a gift as if it had been outright. It was this inability of a donor to place himself in *status quo* which the court condemned in *Untermeyer* v. *Anderson*.

I confess the matter is more difficult when considered with reference to estates created after September 8, 1916, the effective date of the first act on the subject, and an intimation to the effect that the line should be drawn there appears in the *Northern Trust Co.* decision. It is also true that in the *Blodgett* and *Untermeyer* cases the gift tax there under consideration was entirely new legislation, but the court made no such distinction in the *Coolidge* case, where one of the transfers at least was made after the enactment of a similar statute and the 1918 Act was specifically retroactive.

In any event the Board has drawn no such line of distinction. *Charles L. Harris, Administrator*, 5 B. T. A. 41; *James Duggan, Executor*, 6 B. T. A. 1098, and 8 B. T. A. 482; *Edward H. Alsop, Executor*, 7 B. T. A. 848. In the *Lange* and *Slocum* cases, this day decided, it is now proposed to apply the 1924 Act to estates by the entireties created as long ago as 1898, 18 years before the first taxing act on the subject.