In the Matter of the Estate of ROBERT WEIDEN, Deceased.

Surrogate's Court, Kings County, October 10, 1932.

*Harry M. Peyser [Seth T. Cole* of counsel], for the State Tax Commission.

*Benjamin Greenspan,* for the executors.

WINGATE, S. It is a somewhat unusual experience for a court of first impression to address itself to the solution of an important and novel question with the knowledge that substantially the same controversy is simultaneously pending before the Supreme Court of the United States. Such is the situation presently presented.

The issue involves so much of the recently-enacted Estate Tax Law of the State of New York as imposes a tax upon real property in which the decedent was interested during his lifetime as a tenant by the entirety when such tenancy was created prior to the effective date of the statute and prior to the time when property so held was first selected in any of our tax laws as an appropriate subject of taxation.

The question is raised by an appeal from the *pro forma* order of this court, confirming the report of the tax appraiser and assessing a tax upon the estate of this decedent. As reported, the appraiser included in the gross estate five parcels of real estate, which at the time of decedent's death possessed an aggregate value of $120,000. These properties are all located in the State of New York and were in each case conveyed to the decedent and his wife as tenants by the entirety at the time of their original acquisition. Such purchases and conveyances were made, respectively, on February 1, 1893, September 10, 1895, February 26, 1903, April 29, 1905, and March 23, 1908. The wife survived the husband, and no showing has been made that she had any previous interest in the properties or made any contribution to their cost of acquisition.

The enactment by virtue of which this tax has been imposed is contained in article 10-C of the Tax Law of the State of New York, which, as a whole, was enacted by chapter 710 of the Laws of 1930, and went into effect on September first of that year. The provisions of that law, so far as here pertinent, read as follows:

" § 249-r. Gross estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible,

wherever situated (except real property situated and tangible personal property having an actual situs outside this state): * * *

" 5. To the extent of the interest therein held * * * as tenants by the entirety by the decedent and spouse, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth; * * *

. " 10. Subdivisions * * * five, * * * and nine of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this article * * *."

The taxing act of 1930 marked a somewhat radical change from the policy theretofore adopted by the State of New York for the taxation of the estates of decedents. The transfer or succession tax which had been in operation for many years was repealed, and in its place an estate tax was substituted, largely modeled on and corresponding to the Federal act. As was stated in the report of the Commission appointed for the purpose of considering and recommending changes in the law: " The procedure has been made as similar as possible to that of the Federal estate tax, with certain necessary changes."

Apparently no such change was thought necessary by the Commission or the Legislature in the provisions here pertinent, as they correspond substantially word for word with those of the United States Revenue Act of 1926.

As contained in the United States Code, title 26, chapter 20, part 1, section 1094, the Federal law reads:

" § 1094. Gross estate; value of. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, whenever situated —* * *

" (e) To the extent of the interest therein held * * * as tenants by the entirety by the decedent and spouse * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: * * *

" (h) Subdivisions * * * (e) * * * and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and

described therein, whether made, created, arising, existing, exercised, or relinquished before or after 4.01 post meridian June 2, 1924."

In view of the comparative unfamiliarity of members of the New York bar with the theory of estate taxes as distinguished from transfer or succession taxes, a brief consideration of their distinguishing characteristics may be appropriate.

The basis of both taxes is the privilege accorded by the sovereign or State for the devolution of property from one person to another on death. Both are privilege taxes as distinguished from property taxes, and whereas the value of the specific items of property which pass are, and under our Constitutions probably must be, taken into consideration in determining the amount of the tax, such tax, when assessed, is indirect as opposed to a direct tax on property. As was said by Mr. Justice McKenna, writing for the court in *Magoun* v. *Illinois Trust & Savings Bank* (170 U. S. 283, at p. 288): " 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and therefore the authority which confers it may impose conditions on it." (See, also, *Knowlton* v. *Moore*, 178 U. S. 41, 47.)

Obviously, upon a transmission of property by death, the State extends a privilege to two persons, *first*, to the decedent, to whom the right is granted to have his property descend to persons of his blood or selection, and, *second*, to the recipient of such a benefit, who is permitted to receive it. The tax upon the former right is commonly designated an estate tax, whereas the latter is denominated a transfer or succession tax. The distinction between the two relates to the person whose exercise of the State-granted privilege is made the subject of the impost; whether it is upon the right of the decedent-donor to give, or the living-donee to take. Both forms of taxes have been in vogue in all countries from very early times. According to Hanson (Hanson's Death Duties, p. 1), " Probate duty is (in England) the oldest form of death duty, having been established in 1694." This is described by Mr. Justice White in *Knowlton* v. *Moore* (178 U. S. 41, at p. 48) as " a fixed tax dependent on the sum of the personal estate within the jurisdiction of the probate court, payable on the grant of letters of probate by means of stamp duties, and was treated as an expense of administration to be deducted out of the residue of the estate."

In 1780 the English Parliament also enacted a legacy tax which was imposed on the recipient of the benefit. It is, therefore, obvious that the law-making power may simultaneously make tax exactions upon the exercise of both rights, as, indeed, was done in this State

by the Transfer Tax and the former Estate Tax Laws which, for a time, were cotemporaneous.

Perhaps the clearest explanation of the difference of basis between estate and transfer taxes which has been found is contained in Hanson's " Death Duties " (at p. 63), where, in writing of the English Finance Act of 1894, he says: " The new duty imposed by the Finance Act, and called estate duty * * * supersedes probate duty; but the key to the construction of the Finance Act lies in remembering that the new estate duty, although it is leviable on property which was left untouched by probate duty, such as real estate, yet is in substance of the same nature as the old probate duty. What it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death. Unless this principle is kept clearly in view, the mind is constantly tempted by the wording of the act to revert to principles of succession duty which have no real connection with the subject."

In final analysis, however, it must be recalled that both taxes are privilege taxes and are an impost exacted by the State as a condition to the exercise of the right (a) to transmit or (b) to receive property on death.

This brings us naturally to a consideration of the alleged exercise of the right to transmit to the surviving spouse property held by the entirety, which is the subject-matter of the present inquiry. This involves an examination of the characteristics of such a tenancy and a determination of whether the right of the survivor to take, is a privilege granted by the State at the time of the death of the first tenant to perish, or whether like a joint tenancy or the vesting in possession of a trust remainder, it is a right inherent in the tenancy from its inception. On this subject, since the real property in question is within the exclusive jurisdiction of the several States, the determinations of the State courts are conclusive in an interpretation either of the State or Federal law. (*Warburton* v. *White*, 176 U. S. 484, 496; *Tyler* v. *United States*, 281 id. 497, 501). So far as New York realty is concerned, therefore, the pronouncements on this subject by our courts are controlling.

Determinations on this subject are numerous and uniform, wherefore, the task of citation becomes almost entirely one of selection from the vast number of pronouncements readily available.

In *Bertles* v. *Nunan* (92 N. Y. 152) the Court of Appeals in the course of an opinion holding that the common-law tenancy by the entirety continued to exist in unaltered form in spite of the statutory removal of the disabilities of the wife, said (at p. 156): " By the common law, when land was conveyed to husband and wife they did not take as tenants in common, or as joint tenants, but each became

seized of the entirety, *per tout, et non per my*, and upon the death of either the whole survived to the other. The survivor took the estate, not by right of survivorship simply, but by virtue of the grant which vested the entire estate in each grantee."

This thought is emphasized in *Matter of Klatzl* (216 N. Y. 83), in which the court says (at p. 86): " While a tenancy by the entirety resembles a joint tenancy in that survivorship attaches to both, it is not a joint tenancy in substance or form (*Stelz* v. *Shreck*, 128 N. Y. 263, 266: *Barber* v. *Harris*, 15 Wend. 615). It involves a more intimate union of ownership than joint tenancy or any other estate. Joint tenants are seized *per my et per tout*, whereas tenants by entirety are seized *per tout et non per my*. * * * In a tenancy by entirety the survivor takes the estate ' not by right of survivorship simply, but by virtue of the grant which vested the entire estate in such grantee.' (*Bertles* v. *Nunan, supra*, 156.) As Judge COWEN, in *Jackson* v. *McConnell* (19 Wend. 175, 178), said: ' The survivorship presents the greatest formal resemblance; and yet, instead of putting that on the notion of a joint tenancy, the authorities all refer it to the established effect of a conveyance to husband and wife, pretty much independent of any principles which govern other cases.' "

In a concurring opinion in the same case, Chief Judge WILLARD BARTLETT says (at p. 88): " The only substantial difference between such a tenancy and a joint tenancy is that the tenancy cannot be severed except by their joint consent."

Finally, in *Matter of Lyon* (233 N. Y. 208), in which the court held that no part of the interest of a surviving spouse in a tenancy by the entirety was subject to the imposition of a transfer tax where the tenancy was created prior to the enactment of the law providing the impost, the court said (at p. 211): " Husband and wife were not joint tenants. One did not acquire the rights and property of the other by survivorship. The fee was indivisible. As an entirety it was vested in both. For this purpose they were considered one and not two. On the death of either the fee vested in the other, not because there was a transfer of any part of the estate, but because the survivor was the representative of the single ownership. The rule was a technical one. So are many of the rules affecting real estate. We appeal to history and not to logic for the explanation."

The final case selected for citation in this connection is *Hiles* v. *Fisher* (144 N. Y. 306). Here, defendants were husband and wife.

In 1866 the premises in question were conveyed to them as husband and wife. In 1885 the husband borrowed certain money from the plaintiff and as security therefor executed a mortgage on

the jointly held property in which the wife did not join. This mortgage was foreclosed and the question arose as to the rights of the plaintiff who purchased on the foreclosure sale, and the wife.

The court, in holding that plaintiff by reason of the foreclosure became a tenant in common with the wife subject to her right of survivorship, said (at p. 312): "* * * The grand characteristic which distinguishes a tenancy by the entirety from a joint tenancy is its inseverability, whereby neither the husband nor the wife, without the assent of the other, can dispose of any part of the estate so as to affect the right of survivorship in the other. (1 Bl. 182; Wash. on Real Prop. 562.) Each is said to be seized of the whole estate, and they do not take by moieties, * * *."

Again (at p. 313): "* * * But it is important in view of the subsequent discussion to observe that the wife, as well as the husband, took an estate under a grant to both. Each was said to be seized of the whole, and not of any separate part. Neither could convey his or her interest to the prejudice of the right of survivorship in the other."

Again (at p. 315): "* * * Either the rents and profits follow the nature of the estate, and can neither be disposed of nor charged except by the joint act of both husband and wife, which seems to be the view taken in *McCurdy* v. *Canning* (64 Pa. St. 39), or the parties become tenants in common or joint tenants of the use, each being entitled to one-half of the rents and profits during the joint lives, with power to each to dispose of or to charge his or her moiety during the same period, which seems to be the view taken in *Buttlar* v. *Rosenblath* (42 N. J. Eq. 651). We think the rule adopted in New Jersey best reconciles the difficulties surrounding the subject. The estate granted is not thereby changed. It leaves it untouched, with all its common-law incidents. It deals with the rents and profits and the use and control of the estate during coverture only, and gives to each party equal rights so long as the question of survivorship is in abeyance, thereby conforming to the intention of the new legislation to take away the husband's right *jure uxoris*, in his wife's property, and to enable the wife to have and enjoy 'whatever estate she gets by any conveyance made to her or to her and others jointly, and does not enlarge or diminish that estate.'"

Again (at p. 316): "* * * The husband had a right to mortgage his interest, which was a right to the use of an undivided half of the estate during the joint lives and to the fee in case he survived his wife, and by the foreclosure and sale the plaintiff acquired this interest and became a tenant in common with the wife of the prem-

ises subject to her right of survivorship." (See, also, *Matter of McKelway*, 221 N. Y. 15, 19.)

The composite result of these controlling authorities is to demonstrate that in the State of New York a conveyance of land to husband and wife as tenants by the entirety does two things, namely:

(1) It vests absolutely in each spouse a legal life estate in the property in question in common with the other spouse, and (2) it vests in each spouse a remainder in the whole property subject to be divested by his or her death prior to the death of the other. Both of these vested estates inhere in both parties from the moment of the conveyance " by virtue of the grant " contained therein. (*Bertles* v. *Nunan, supra.*)

Whereas, as a legal estate, the rights of a tenant by the entirety are *sui generis*, they are paralleled in equity with extreme frequency. When A creates a trust with income payable in equal shares to B and C and with the remainder payable absolutely to the survivor, the situation is precisely identical in the absence of a statutory enactment of the spendthrift trust variety.

In both instances the remainder rights of the survivor depend in no sense upon any privilege granted by the State at the time of the termination of one of the two lives. In each, those rights were created and became vested and effective when the original transaction took place, namely, the conveyance by the entirety in the one case, and the execution and delivery of the trust deed in the other.

Under such circumstances, it is primary that both the Federal and our State Constitutions will not permit the passage of a law, the effect of which is to subtract from the value of the right which is vested in the survivor. This principle is so fundamental, indeed axiomatic, that citation of authorities on the subject would seem superfluous. In view, however, of the misconceptions which seem to have arisen respecting the decisions of the United States Supreme Court in the cases of *Tyler* v. *United States* (281 U. S. 497) and *Phillips* v. *Dime Trust & Safe Deposit Co.* (284 id. 160), a somewhat extended review of the authorities appears both necessary and desirable.

*Coolidge* v. *Long* (282 U. S. 582), decided in 1931, was an appeal from the State of Massachusetts involving the constitutionality of a tax law of that State which was attacked on the grounds of its alleged repugnancy to the contract and due process clauses of the Constitution and the equal protection clauses of the Fourteenth Amendment. The pertinent facts disclosed were as follows: J. R. Coolidge and his wife Julia executed deeds of trust in 1907 by which they conveyed real and personal property to trustees

to pay the income thereof to themselves for life, with remainders over to their five sons, with the further provision that if any of the sons should predecease them, the survivors should take the shares of those deceased. There was no provision in the deeds for modification or termination by the settlors. When the trust deeds were executed there was no statute under which succession to trust property could be taxed, but in 1921 a law was passed taxing successions to remainders which came into beneficial possession after May 4, 1921. The court said (beginning at p. 595): "The supreme judicial court sustained the exaction as an excise. It held that possession or enjoyment upon the death of the survivor of the settlors was a taxable commodity under the statute enacted after the creation of the trust.

"The trust deeds are contracts within the meaning of the contract clause of the Federal Constitution. They were fully executed before the taking effect of the state law under which the excise is claimed. The Commonwealth was without authority by subsequent legislation, whether enacted under the guise of its power to tax or otherwise, to alter their effect or to impair or destroy rights which had vested under them. *Appleby* v. *City of New York*, 271 U. S. 364; *Fletcher* v. *Peck*, 6 Cranch, 87, 136; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 624, 656; *Farrington* v. *Tennessee*, 95 U. S. 679, 683; *Carondelet Canal Co.* v. *Louisiana*, 233 U. S. 362, 373, 378.

"This court has held that the Revenue Act of 1914, §§ 319–324, in so far as it undertook to impose a tax on gifts fully consummated before its provisions came before Congress (*Blodgett* v. *Holden*, 275 U. S. 142) or before its passage (*Untermyer* v. *Anderson*, 276 U. S. 440) was arbitrary and repugnant to the due process clause of the Fifth Amendment. In *Nichols* v. *Coolidge*, 274 U. S. 531, we considered the trust deed of Mrs. Coolidge that is now before us. The question in that case was whether the value of the property so conveyed prior to the enactment should be included in her estate for the purpose of ascertaining the federal estate tax thereon. We said (p. 542):

"'This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R.*, 240 U. S. 1, 24; *Barclay & Co.* v. *Edwards*, 267 U. S. 442, 450. See also *Knowlton* v. *Moore*, 178 U. S. 41, 77. And we must conclude that section 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect

in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation.'

" See *Levy* v. *Wardell*, 258 U. S. 542, 544. The States are similarly restrained by the due process clause of the Fourteenth Amendment.

" In its opinion, the state court suggests that the federal estate tax was upon property of the deceased transferred at his death and that it was levied upon a subject ' quite different from the succession to property by a beneficiary, which is the subject of. the present excise.' Undoubtedly the State has power to lay such an excise upon property so passing after the taking effect of the taxing Act. The fundamental question here is whether rights had so vested prior to the taking effect of the tax statute that there was thereafter no occasion in respect of which the excise might constitutionally be imposed. The state court held that the succession was not complete until the death of the survivor of the grantors and that therefore the tax is valid. It is well understood that, when the jurisdiction of this court is invoked to determine whether a state law impairs the rights of the litigant under a prior contract, or whether the State is depriving him of his property without due process of law in violation of the Fourteenth Amendment and the question turns upon the existence or terms of a contract, this court is bound to determine for itself whether there is a contract and to ascertain its true meaning and effect. That rule is necessary in order that this court may properly enforce these provisions of the Constitution. *Railroad Commission* v. *Eastern Texas R. Co.*, 264 U. S. 79, 86, and cases cited.

" By the deed of each grantor one-fifth of the remainder was immediately vested in each of the sons subject to be divested only by his death before the death of the survivor of the settlors. It was a grant *in præsenti* to be possessed and enjoyed by the sons upon the death of such survivor. *Blanchard* v. *Blanchard*, 1 Allen, 223; *Clarke* v. *Fay*, 205 Mass. 228; *McArthur* v. *Scott*, 113 U. S. 340, 379 and cases cited. And see *United States* v. *Fidelity Trust Co.*, 222 U. S. 158; *Henry* v. *United States*, 251 U. S. 393. The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment. The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. *Coolidge* v. *Loring, supra*, 223. Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. *Knowlton* v. *Moore*, 178 U. S.

41, 56. Nothing moved from her or him or from the estates of either when she or he died. There was no transmission then. The rights of the remaindermen, including possession and enjoyment upon the termination of the trusts, were derived solely from the deeds. The situation would have been precisely the same if the possibility of divestment had been made to cease upon the death of a third person instead of upon the death of the survivor of the settlors. The succession, when the time came, did not depend upon any permission or grant of the Commonwealth. While the sons if occasion should arise might by appropriate suit require the trustees to account, it is to be borne in mind that the property was never in the custody of the law or of any court. Resort might be had to the law to enforce the rights that had vested. But the Commonwealth was powerless to condition possession or enjoyment of what had been conveyed to them by the deeds. *Barnitz* v. *Beverly,* 163 U. S. 118, and cases cited.

"*The fact that each son was liable to be divested of the remainder by his own death before that of the survivor of the grantors does not render the succession incomplete. The vesting of actual possession and enjoyment depended upon an event which must inevitably happen by the efflux of time, and nothing but his failure to survive the settlors could prevent it.* Blanchard v. Blanchard, *supra;* Moore v. Lyons, *25 Wend. 119, 144. Succession is effected as completely by a transfer of a life estate to one and remainder over to another as by a transfer in fee.* Reinecke v. Northern Trust Co., *278 U. S. 339, 347–348.*"

Again (at p. 599): "*No Act of Congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment.*"

Again (at p. 600): "*This court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment.*"

Again (at p. 602): " The overwhelming weight of authority sustains the conclusion that the succession in the present case was complete when the deed took effect."

Again (at p. 605): " We conclude that the succession was complete when the trust deeds of Mr. and Mrs. Coolidge took effect and that the enforcement of the statute imposing the excise in question would be repugnant to the contract clause of the Constitution and the due process clause of the Fourteenth Amendment. We need not consider whether it would also conflict with the equal protection clause." (Italics not in original.)

*Matter of Craig* (97 App. Div. 289; affd., 181 N. Y. 551) is of especial interest for the reasons that it was a decision of this depart-

ment and that it is referred to as a persuasive authority by the Supreme Court of the United States in *Coolidge* v. *Long* (*supra*).

In that case it appeared that in 1875 Hector Craig executed an ante-nuptial deed of trust which provided for the payment of the income of the trust property to him for life and at his death the principal to be paid to his wife and issue. He died in 1901. In 1896 a tax law was passed imposing a tax upon all estates and remainders or reversions which vested prior to June 30, 1885, but which will not come into actual possession of the present beneficiary interested until after the passage of the act. The question was whether the remainders of these trusts were subject to such tax.

The court in holding that they were not said (at p. 293): " In considering the question the word ' vested ' as used in the above and many other opinions is really to be construed as equivalent to the word ' accrued ' and not as distinguished from merely contingent interests. In that sense a property right which has been fully acquired is protected by the contract and becomes in law a *vested* right, the enjoyment of which is not to be deemed as only a privilege and as such consequently subject to taxation upon the right of enjoyment. Referring to the *Pell* case in *Matter of Vanderbilt* (172 N. Y. 69, 73) Judge CULLEN said: ' In that case the interests of the devisees and legatees attempted to be taxed were given by the will of the testator who had died long prior to the enactment of any inheritance tax. Technically they may have been, and probably were, vested subject to be divested by death before the demise of the life tenant, but in the ordinary sense of the term they were contingent, that is to say, it was impossible to determine who would actually enjoy the property until the death of the life tenant. Nevertheless the interests of the devisee *accrued* on the death of the testator, and at that instant, and were immune from legislative attack whether contingent or vested.' In a like sense it may be said that the interests of the appellants herein accrued on the execution and delivery of the trust deed and the happening of the events which made them beneficial parties to it. They then acquired contractual rights which were immune from subsequent legislative attack."

Again (at p. 295): " The deed in this instance was made, not in contemplation of death, but of marriage, and was designed to make an effective provision *in præsenti* for the prospective wife and the possible offspring. No reservation being made of the power of revocation it became operative and effective as a grant upon execution and delivery wholly irrespective of the time when possession was to be given of the estate conveyed, to the same

extent and in the same sense and degree as a devise of a remainder becomes operative and effective upon the death of a testator during the existence of an intermediate estate, and the logic which precludes legislative impairment in the one case is equally imperative in the other. The difference between rights and interests conferred or created by the execution of a will and those conferred or created by the execution and delivery of a deed is inherent. The will may be canceled and revoked or other testamentary disposition made without in general impairing any property rights of the devisees. But whatever rights are conferred or created by deed or conferred or created generally when the deed becomes operative and effective as such, and if conferred or created without the power of revocation cannot be afterwards affected or destroyed by either the grantor or the law.

" I do not lose sight of the fact that the transfer tax is levied, not upon the property affected, but upon the right of succession. The underlying principle which supports the tax is that such right is not a natural one but is in fact a privilege only, and that the authority conferring the privilege may impose conditions upon its exercise. But when the privilege has ripened into a right it is too late to impose conditions of the character in question, and when the right is conferred by a lawfully executed grant or contract it is property and not a privilege, and as such is protected from legislative encroachment by constitutional guaranties."

Perhaps the most pertinent New York authority on the general subject is *Matter of Lyon* (233 N. Y. 208), decided in 1922. Whereas this decision involved the taxability of tenancies by the entirety under the Transfer Tax Law, the principles enunciated are equally applicable under the Estate Tax Law. The question presented was whether the transfer upon death of one tenant by the entirety to the other was a taxable transfer under the Transfer Tax Law of 1916.

The court in holding that it was not said (at p. 211): " The statute with regard to taxable transfers originated in 1885 (Ch. 483). Then and since a tax has been placed upon the transfer of any property by will or by our intestate laws or where made by gift in contemplation of death. This was not a tax upon the property itself. It was a tax upon the privilege of succession (*Matter of Penfold*, 216 N. Y. 163); and the privilege of succession under certain defined circumstances. At once came the question as to when this tax was to be paid. How about dower (*Matter of Weiler*, 139 App. Div. 905); or curtesy (*Matter of Starbuck*, 137 App. Div. 866); or of ante-nuptial settlement (*Matter of Baker*, 178 N. Y. 575); or of joint tenancy (*Matter of Klatzl*, 216 N. Y. 83)?

In all these cases a portion of the estate vested in the deceased passed upon his death to another. But as it did not pass by will or by inheritance or by gift, there was no tax. Nor was there a tax upon an estate in remainder created before but received in possession after 1885. (*Matter of Seaman*, 147 N. Y. 69; *Matter of Lansing*, 182 N. Y. 238.) The reason, however, was different. Here there was no transfer of any kind upon the death of the life tenant. His life estate did not pass to the remainder-men. It could not be conveyed to the latter. It could only be released. (Co. Litt. sec. 479, 480; Bacon's Abridg. vol. VI, p. 9.) By either death or release the life estate was extinguished. The same reasoning applied to an estate by the entirety. (*Matter of Klatzl, supra.*)

" Since 1916 the statute has been altered. (Cons. Laws, ch. 60, section 220, subd. 7.)"

Again (at p. 212): " Whatever power the Legislature may have with regard to such estates later created does not extend to those already vested before the adoption of the amendment. (*Matter of Pell*, 171 N. Y. 48.) This estate by the entirety with all its incidents was vested in Mr. and Mrs. Lyon in 1910. What was then acquired may not subsequently be diminished by a tax upon that acquisition. As there was no transfer after 1916 there can be no tax. Mrs. Lyon now has what she had in 1910, no more and no less. (*Matter of Mc Kelway, supra.*) "

Additional pertinent authorities might be multiplied to an almost limitless extent, but it will be sufficient to draw attention to *Germania Savings Bank* v. *Suspension Bridge* (159 N. Y. 362, see particularly pp. 367 and 368); *Matter of Pell* (171 id. 48, see particularly pp. 52, 55 and 56) and *Matter of Lansing* (182 id. 238, 243, 247, 248 and 249).

The State Tax Commission, in its argument in favor of the constitutionality of the tax, relies wholly on three Federal cases: *Tyler* v. *United States (supra)*; *Phillips* v. *Dime Trust & Safe Deposit Co. (supra)*, and *Third National Bank & Trust Co.* v. *White* (45 F. [2d] 911; affd., without opinion, 58 id. 1085). The last named case was decided in 1930 by the District Court for Massachusetts and is directly in point. It is, however, based solely on the apparently binding effect on the court of the *Tyler* case. The dissatisfaction which the learned judge who decided it felt with the result is indicated by his statement in referring to the *Tyler* decision: " Aside from it I should certainly have supposed that the interest in the property which Mr. Harris irrevocably transferred to his wife in 1915, many years before his death and not in contemplation of it, then ceased to be part of his estate. ' One may freely give his property to another by absolute gift without subjecting himself

or his estate to a tax, but we are asked to say that this statute means that he may not make a gift *inter vivos*, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute.' STONE, J., in *Reinecke* v. *Trust Co.*, 278 U. S. 339, at pages 347 and 348; 49 S. Ct. 123, 125; 73 L. Ed. 410; 66 A. L. R. 397. If Mr. Harris had conveyed the property, or even an undivided interest in it, to Mrs. Harris absolutely, the value of the portion so conveyed could not have been taxed. The conveyance which he actually made divested him of a half interest more completely than if the estate had been a tenancy in common. Thereafter he could not transfer any part of the property without her assent. To say that, because the tenancy which he created was one by the entirety, it subtracted nothing from the value of what remained in him, is certainly not the fact. If the legal fiction that every tenant by the entirety owns the entire property be resorted to — it is repudiated in the opinion — it would seem to follow that the survivor's rights were not increased by the death which, in this view, merely ' obliterated ' a conflicting interest. However, as I have said, I am bound by the *Tyler* case; and there must be judgment for the defendant."

The sole authorities for a contrary view are, therefore, the *Tyler* and the *Phillips* cases. In both, however, the tenancies by the entirety were created *after* Federal taxing statutes, imposing taxes upon the devolution of the remainders of such estates, had been enacted.

The decision in the *Phillips* case is expressly made to turn on the fact that those creating the tenancy had notice by reason of a previous similar enactment, that Congress considered devolution under tenancies by the entirety suitable subjects for taxation. This clearly appears from the following extract from the opinion of the court written by Mr. Justice STONE (at p. 166): " Group 2. The tenancies in all of the items of the second group were created after the passage of the 1916 Revenue Act. Congress had by that act adopted a system of death taxes, embracing, as it lawfully might, estates by the entirety. As was pointed out in *Tyler* v. *United States*, *supra*, pp. 503, 505, such estates are appropriate subjects of death taxes and the taxation of them is a suitable measure to prevent evasion of a system of taxation levied on estates passing at death by will or inheritance. In both respects they resemble gifts made in contemplation of death, likewise taxed by the estate tax provisions of the 1916 and later revenue acts. The considerations which led us, in *Milliken* v. *United States*, 283

U. S. 15, to uphold taxation of gifts in contemplation of death, made after the 1916 Act and before that of 1918, at the higher rate of the latter act, are equally applicable here. The knowledge available before the creation of the estate that it was embraced within an established taxing system and that its taxation, on the same basis and in the same manner as decedents' estates, was an essential part of the system to prevent evasions, relieves the present tax of the objection that it is arbitrarily retroactive."

This leaves for consideration only the authority of the *Tyler* case. Since it expressly appears from the opinion therein (p. 500) that " In [such] case the estate was created after the passage of the applicable act,   *   *   * "   the language of the decision in so far as it might appear applicable to the present question is possible of dismissal either as not intended to apply to the question of a tenancy created before the enactment of the statute, which is the problem of the instant case, or as pure dictum not binding even on the court rendering it.

It is fundamental that in analyzing the determination of any decision, the issue involved must first be ascertained, and the language employed must then be considered in relation to that issue. In the *Tyler* case the sole attack on the statute was by reason of the claim that it was a direct, as distinguished from an indirect, tax and was thus in violation of article 1, section 2, clause 3, and section 9, clause 4, of the Constitution of the United States. This issue involves vastly different considerations from those presented in the case at bar. Here it is claimed that the statute is retroactive and attempts to tax estates and rights which had vested long before its enactment, and that consequently it violates article 1, section 10, clause 1, of the Constitution of the United States which forbids the passage of any law impairing the obligation of contracts, also, the inhibitions of the Fifth Amendment and section 1 of the Fourteenth Amendment, which provide that a person shall not be deprived of property without due process of law, and, finally, the Fifth Amendment, which prohibits the taking of private property for public use. It is further claimed that the Constitution of the State of New York (Art. 1, § 6) is also violated for the two last-stated reasons.

It is, therefore, obvious that the issues in the two cases are about as different as could be imagined. Learned counsel would certainly not contend that a decision which held that a given will did not violate the statute against perpetuities would foreclose a subsequent determination that it did violate section 18 of the Decedent Estate Law prohibiting the disinheritance of a surviving spouse, yet these questions are scarcely more dissimilar than the problem determined in the *Tyler* case and the one here submitted.

Without quoting the rather lengthy opinion of Mr. Justice SUTHERLAND *in extenso*, it may be said that all of its statements which have been seized upon as authority determinative of the case at bar were there advanced *arguendo* against the contention of appellants in that case on the issue there raised. Wresting them from their context and connection and torturing them into the semblance of a determination of the present question, is to do a distinct disservice to the distinguished tribunal which uttered them.

That this is the proper interpretation to be placed upon the language in the *Tyler* case seems entirely evident from the opinion of the same court in the subsequently decided *Phillips* case (at p. 166), where it refused to pass upon, and expressly reserved determination of the government's contention " that the tax was laid on the devolution of rights upon the wife at the death of her husband after the passage of the Act, and that therefore the Statute was not applied retroactively, even though the estate was created before its enactment." (See, also, dissenting opinion of Mr. Justice STONE in *Heiner* v. *Donnan*, 285 U. S. 312, 322, and the emphasis laid on the fact that the tenancy in the *Tyler* case " was created after the passage of the applicable Act " in the review of that decision in *Coolidge* v. *Long*, 282 U. S. 582, 599.)

In conclusion, one final criticism of the statute under consideration (Tax Law, § 249-r, subd. 5) should be noted. It attempts to include in the gross estate the total value of the property held " as tenants by the entirety by the decedent *and* spouse " (Italics not in statute). In other words, adopting the theory of estate tax laws, it treats as devolving from the decedent not only what he possessed during his life (and which by the terms of the tenancy has terminated on his death), but also that which belonged to the spouse prior to his death. This amounts to saying that if A and B are tenants by the entirety and A dies first, the entire value of the property is from the moment of the grant up to the time of his decease vested in A, but if B dies first, it was during that period vested in B. On the authoritative determinations above cited respecting the nature of such a tenancy, this is sheer nonsense. Both tenants, while the tenancy continues, have valuable rights in the estate. Perhaps there is something which passes from the tenant first to die. If so, this may be taxed, but certainly if any such thing does exist, it is less than the entire value of the property. In this connection the language of the Supreme Court of the United States in *Nichols* v. *Coolidge* (274 U. S. 531) becomes pertinent. The court says (at p. 541): " Certainly, Congress may lay an excise upon the transfer of property by death reckoned upon the value of the interest which passes

thereby. But under the mere guise of reaching something within its powers Congress may not lay a charge upon what is beyond them. Taxes are very real things and statutes imposing them are estimated by practical results."

At page 542: " The statute requires the executors to pay an excise ostensibly laid upon transfer of property by death from Mrs. Coolidge to them but reckoned upon its value plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death. Is the statute, thus construed, within the power of Congress?

" Undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity.

" Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution. Real estate transferred years ago, when of small value, may be worth an enormous sum at death. * * *

" This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R.*, 240 U. S. 1, 24; *Barclay & Co.* v. *Edwards*, 267 U. S. 442, 450. See, also, *Knowlton* v. *Moore*, 178 U. S. 41, 77. And we must conclude that § 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider."

It follows that in the opinion of the court section 249-r of article 10-C of the Tax Law, in so far as it applies to tenancies by the entirety created prior to 1916, is in violation of the Constitutions of the United States and of the State of New York, and that the appeal in this case must be allowed.

The proceeding is, therefore, remitted to the appraiser for further action in accordance with this decision.

Proceed accordingly.