In the Matter of the Estate of WILLIAM C. SCHREIJACK, Also Known as WILLIAM SCHREIJACK, Deceased.

Surrogate's Court, Kings County, March 17, 1933.

*Haskell, Lyon & Block*, for the appellant.

*Herman Block*, for the executrix.

*Harry M. Peyser*, for the Tax Commission.

WINGATE, S. This is an appeal by the executrix from the *pro forma* order of this court assessing the estate tax against this estate. The basis of the appeal is founded upon the inclusion by the appraiser in the gross estate of (1) a certain parcel of New York real estate conveyed to the decedent and his wife as tenants by the entirety by deed dated September 29, 1923; (2) a savings bank account with Prudential Savings Bank, standing in the name of " Lizzie Screijack or William Screijack; " (3) a mortgage on certain property in Richmond Hill to " William C. Schreijack and Henry Schreijack," dated January 1, 1925; (4) a mortgage on property on Cypress avenue to " William C. Schreijack and Lizzie Schreijack, his wife and the survivor of them," the effective date of which is April 1, 1930; and (5) a mortgage dated April 11, 1927, to " William Schreijack and Lizzie Schreijack, his wife, as joint tenants and not as tenants in common " on property in Kew Gardens.

It is, of course, obvious that the appraiser has acted in strict conformity with the terms of the statute in his inclusion of these items of property in the gross estate, since section 243-r of the Tax Law, so far as here pertinent, reads:

" § 249-r. Gross estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (except real property situated and tangible personal property having an actual situs outside this state): * * *

" 5. To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth."

This enactment is substantially identical with that contained in section 1094 of title 26 of chapter 20 of part 1 of the United States Code, from which it was copied.

The sole attack upon the act of the appraiser is predicated upon the claim that this enactment is in violation of the Federal and New York State Constitutions, as impairing the obligation of contracts, taking property for public use without compensation and depriving the survivor of property without due process of law.

It is undeniably regrettable that the presentation of this question was not reserved until it could have been raised in a case where the amount involved would have warranted its presentation to all courts competent to pass upon it, to the end that it might have been determined by final authority. To be sure, appellant has presented a carefully prepared brief of some length, but the State Tax Commission has elected to submit without brief, solely on the papers before the court.

The two basic constitutional questions raised relate, *first*, to the alleged retroactive nature of the tax imposed, and *second*, to the contention that in respect to each item of property involved, a moiety thereof belonged to the survivor and that the tax being imposed upon the whole value, impaired the ownership of the portion validly vested in such survivor.

The former contention is capable of ready disposal. All of the tenancies in question were created subsequent to the year 1923. By section 83 of chapter 323 of the Laws of 1916 the following subdivision was inserted in section 220 of the Tax Law: " Whenever property is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons the right of the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased tenant by the entirety, joint tenant or joint depositor and had been bequeathed to the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant or joint depositor by will."

This section was continued without amendment in chapter 626 of the Laws of 1919 and in chapter 430 of the Laws of 1922. Chapter 177 of the Laws of 1924 amended the extent of the tax upon tenancies

by the entirety, reducing it to one-half of the total value of the property and chapter 143 of the Laws of 1925 made an analogous change in regard to the proportion of the value which should be subject to the levy in case of properties held in two or more names.

It is, therefore, apparent that from the year 1916 to and including 1930, at which time the last of the properties here in question was acquired, the statutes of New York contained laws which imposed taxes upon the devolution by death of all the varieties of property contained in this estate.

In *Phillips* v. *Dime Trust & Safe Deposit Company* (284 U. S. 160) the court had before it the same controversy which is here presented. Certain tenancies were created during the effective period of the Federal act of 1916, which was subsequently repealed upon the enactment of a similar act in 1924. The contention was made in that case, as in the one at bar, that the taxing statute existing at the time of the creation of the tenancies having been repealed, the imposition of any tax whatsoever was improper since the imposition of a tax under the law of 1924 would be to give the latter a retroactive effect. In overruling this contention, the court says (at p. 166): " The tenancies in all of the items of the second group were created after the passage of the 1916 Revenue Act. Congress had by that act adopted a system of death taxes, embracing, as it lawfully might, estates by the entirety. * * *. The considerations which led us, in *Milliken* v. *United States*, 283 U. S. 15, to uphold taxation of gifts in contemplation of death, made after the 1916 Act and before that of 1918, at the higher rate of the latter act, are equally applicable here. The knowledge available before the creation of the estate that it was embraced within an established taxing system and that its taxation, on the same basis and in the same manner as decedents' estates, was an essential part of the system to prevent evasions, relieves the present tax of the objection that it is arbitrarily retroactive."

In *Milliken* v. *United States* (283 U. S. 15) the court said (at p. 23): " It is sufficient for present purposes, that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death. Decedent's gift as a substitute for a testamentary disposition was thus brought

within the operation of the 1916 Act taxing such gifts on the same basis, with respect to rate and valuation, as transfers of property at death. Not only was the decedent left in no uncertainty that the gift he was then making was subject to the provisions of the existing statute, but in view of its well understood purpose he should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation under which substitutes for testamentary gifts were classed and taxed with them."

On the subject of the propriety of tax under the higher rate of the statute existing at the time of the death, the court says (at p. 24): " The present gift was subject to the excise when made; and for reasons already indicated, we think a mere increase in the tax, pursuant to a policy of which the donor was forewarned at the time he elected to exercise the privilege, did not change its character."

These decisions are decisive of the contention that the tax, as applied in the case at bar, is void by reason of retroactiveness. All of the tenancies here in question were created at a time when the tax laws of this State provided levies on transfers of these types. The decedent was, therefore, on notice of their taxable nature and of the fact that there might be a change in the forms or rates of taxes imposed. Like notice was imposed upon the transferee who must, therefore, be held to have received such interest as he took at the time of the transfer, if any, *cum onere*.

The foregoing considerations substantially determine the second question also. In this respect, however, the result is reinforced by several recent decisions of the Supreme Court of the United States (See *Tyler* v. *United States*, 281 U. S. 497; *Gwinn* v. *Commissioner*, 53 Sup. Ct. 157; *Third National Bank & Trust Co.* v. *White*, Id. 290) which determine that in tenancies of the type here in question, death is a " generating source " of new and hitherto unpossessed rights by the survivor, and that consequently their taxation does not come within the scope of the several constitutional inhibitions here invoked.

The decisions of this court in *Matter of Weiden* (144 Misc. 854; 146 id. 381) are in no wise applicable to the facts of the case at bar. There the tenancies by the entirety were created long before the property rights so created were made the subject of legislative selection as proper basis for tax imposition. Here the grantor and grantees knew that taxes would be levied under the laws then existing and acquired their respective rights not only subject to the laws then in force but also subject to any later laws which might be passed to regulate the subject.

The appeal is, therefore, in all respects dismissed.

Proceed accordingly.