In the Matter of the Estate of WILLIAM LEICHTMAN, Deceased.

Surrogate's Court, Schenectady County, May 11, 1933.

*Arthur E. Bishop*, for the State Tax Department.

*Jacob M. Frankel*, for the petitioner.

CAMPBELL, S. The above-named decedent, William Leichtman, died a resident of Schenectady county on February 2, 1932, leaving a last will and testament dated January 26, 1928, and a codicil thereto bearing date July 5, 1929. Both documents were admitted to probate in this court on March 7, 1932.

A *pro forma* estate tax order was duly made on February 27, 1933, assessing the estate tax at $113.25, following the filing of the return and schedules. The net estate was appraised at $25,658.04.

The codicil bequeaths the sum of $500 to a daughter and directs that this sum be paid to her prior to the creation of the trust designated in the will.

The provisions of the will pertinent to the question at issue are contained in the " second " clause thereof as follows: " I give,

devise and bequeath unto my executors, hereinafter named, all my personal and real property, including the proceeds of certain life insurance policies, all moneys in the bank and all bonds and mortgages which I own or may have an interest in, in trust, nevertheless, for the following uses and purposes:

" A. To receive and collect the income and to invest and re-invest the same in first class mortgage securities to yield not less than 6% and receive the income thereof and to pay therefrom the sum of Fifteen ($15) dollars n weekly installments from said income to my wife, Yetta Leichtman, for and during the time of her natural life, or until such time as she shall re-marry, with discretion to my said Executors to pay to my said wife, an additional amount out of the income, or if the income be insufficient, then out of the principal of my said property, which shall be sufficient to properly maintain and support and care for my said wife during her lifetime, or until she shall re-marry.

" On the death of my said wife, or on her re-marriage then it is my will and direction that the funds in the hands of my executors shall be divided equally among my five children, share and share alike, except that it is my will and direction that the share of my son, Milton Leichtman, shall be held in trust for him by my executors and trustees hereinafter named, until my said son shall reach the age of 35 years, or until such time as in the discretion of my executors and trustees, my son shall be competent to handle and disburse the money so belonging to him.

" It is my further will and direction that should any of my said children pre-decease me or die before my said wife, or before her re-marriage, depending upon which event shall first occur, that the share of the said child so dying, shall belong to his or her heirs, except that my said executors and trustees shall retain the said sums under the provision of the foregoing trust, until the child or children of my said deceased child or children shall attain the age of 21 years.

" It is my further wish and direction that my executors and trustees shall liberally interpret the provision relative to the care and support of my said wife, and that they, in their sound discretion, either individually or collectively, determine under what circumstances and situations it shall be necessary to advance additional amounts of income or principal for the care and support of my said wife."

Thus, it will be seen, the widow, under the will, is given an annuity of fifteen dollars a week with a right to invade the principal, in the discretion of the executors, for her proper maintenance and support, until her death or remarriage. On the death or remarriage of the

widow, the estate is to be divided among the five children of testator, but if any of the children die before the death or remarriage of the widow, the share of the one so dying is given to his or her heirs.

The *pro forma* tax order in question on this appeal to the court allowed an exemption of $11,501.54, the aggregate of the present value of the widow's annuity, certain property which passed to her as a joint tenant, and $500 bequeathed under the codicil to one of the daughters.

Counsel for the estate of said decedent, appealing to this court under section 249-x of the Tax Law, questions the correctness of the *pro forma* tax order as entered, and contends that if the widow fails to invade the principal of the trust fund, the balance of $14,156.50 will be divided among the five children, in which case there will be no tax; or if the widow uses all of the principal, she will then have received $25,158.04, for which an exemption of $20,000 should be allowed.

The State Tax Commission, through its attorney, contends that the order entered February 27, 1933, provides for a correct computation of the estate tax and that it should be sustained.

Under the present Estate Tax Law, exemption is allowed only on account of persons in whom interests in the estate must vest.

Under the terms of the will of the decedent herein, it is possible that the corpus of the trust will not be invaded for the life tenant and that the remainder interests will vest in persons on account of whom no exemptions are allowed under the present statute. As exemptions were allowed in the amount of the valuation of the life estate for the decedent's widow and the $500 bequest to a daughter, it is apparent that the *pro forma* taxing order herein appealed from is correct.

In support of his contention, counsel for the appellants has directed the attention of this court to the following cases: *Matter of Smith* (143 Misc. 606); *Matter of Bob* (N. Y. L. J. Aug. 13, 1932, p. 548).

In the latter case, it seems to this court that Judge FOLEY, in his opinion, correctly states the purpose and effect of the new Estate Tax Law in these words: " It is stated that there are six children who might be possible remaindermen. In case of the death of any of them before the death of the widow, the number of the remaindermen who would take might be reduced or increased, for there is a provision for the substitution of the issue of deceased children.

" Under these circumstances, the allowance of these exemptions upon the theory that there are six children, is not contemplated by section 249-q of the new Estate Tax Law, or under the general plan of the statute. Prompt finality in the fixation of the tax was

intended. The exemptions were to be allowed against such interests as were vested or which might be regarded as almost certain to be vested."

In the case at issue it is possible that the entire fund, both principal and interest, may be exhausted before the death or remarriage of the widow, but this is far from a certainty. So far as appears, in neither of the cases above cited was this element of uncertainty present. It seems to this court that this element of uncertanty, this possibility that there may be no fund at all to vest in any one when the death or remarriage of the widow actually occurs, places all possible remaindermen in the position of doubtful beneficiaries and plainly puts their interests in the class of contingent remainders, rather than vested interests.

Of course, it is possible that the principal may not be invaded by the life tenant, but who shall say which, if any, of the testator's children will be living at the time of the death of testator's widow, and who will then be the legal heir or heirs of such of the children as may have died before the death or remarriage of the life tenant?

In the current case the taxing order allowed personal exemptions aggregating $11,501.54, *i. e.*, $500 bequeathed to a daughter and the balance of $11,001.54 made up on the present value of the widow's annuity and certain property which passed to her as joint tenant, upon the theory that these were the only amounts " *transferred* " within the meaning of section 249-q of the Estate Tax Law.

This theory seems to be supported by the authority of *Humes* v. *United States* (276 U. S. 487). In that case, Mr. Justice BRANDEIS, delivering the opinion of the court, said: " One may guess, or gamble on, or even insure against, any future event. * * * But the fundamental question in the case at bar, is not whether this contingent interest can be insured against, or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer * * * even if equipped with all the aid which the actuarial art can supply * * * could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character."

That the present new Estate Tax Law of the State of New York is patterned after the Federal Estate Tax Law is indicated at page 194 of the additional report (1930) of the New York State Commission to Investigate Defects in the Laws of Estates to our Legislature, in which it is stated:

" (1) Chapter 710 of the Laws of 1930 abolishes the present double system of taxation of estates in New York. The present *transfer tax* law is repealed and there will be one uniform system of taxation based upon an *estate tax*. The procedure has been made as similar as possible to that of the Federal Estate tax, with certain necessary changes. Thus, the work of attorneys in filing returns or schedules with the Federal Government and the State will be simplified where the estate is, of course, subject to taxation by the Federal Government. By the abolition of the transfer tax all the present difficulties of valuing temporary life estates or remainders, either at their reduced or full, undiminished value, and the necessity of determining whether a remainder under the will is vested or contingent, are abolished. The tax will be assessed upon the net estate passing by operation of the will, or by intestacy, or by gifts or other transfers taking effect at death.

" Where the net estate is under one hundred thousand dollars and no Federal tax is payable, the same general system of an estate tax will be imposed by the State. Much larger exemptions are allowed than under the present law. Thousands of moderate and small estates will thereby become exempt from any tax. Many of these estates would be taxable under the present transfer tax law.

" * * * The present system of a temporary deposit to secure a tax on a contingent interest (either life estate or remainder) is abolished, and the withholding by the State of New York for years of estate securities or cash to await the termination of a trust, with all the difficulties and delays which have arisen under that method, will disappear.

" * * * It is estimated that there is on deposit with the State Tax Commission today approximately thirty-five million dollars in securities and over five million dollars in cash, representing temporary deposits made to secure the ultimate payment of the tax in thousands of estates. The income on these different deposits is paid by the State to the trustee and ultimately reaches the life tenant. This complicates the accounting of the trust and presents difficulties for the State authorities and the representatives of the estates."

Thus, it will be seen that the New York State Commission to Investigate Defects in the Laws of Estates, of which Judge FOLEY, who wrote the opinion in the case of Gedale Bob, was chairman, had in mind fashioning the new Estate Tax Law after the Federal act for the various and numerous reasons set forth by the State Commission in its several reports to our State Legislature. Bearing this in mind, the words of Mr. Justice BRANDEIS in *Humes* v. *United States* (*supra*) in relation to " a contingency, the actual value

of which cannot be determined from any known data," are pertinent to the case at bar.

Appellants in the case at bar have not offered any evidence or proof whatever to demonstrate to this court what sum or sums, if any, will remain upon the termination of the trust for the widow. Such was the case in *Matter of Mead* (145 Misc. 893). In that case, Surrogate WINGATE (at p. 330) said: " It seems unquestionable that much of the confusion of counsel in this case would have been avoided had the differentiation between an estate tax, and a transfer or succession tax been clearly borne in mind. The statute under which the present tax has been assessed is an estate tax in the strict sense of the word and as such is an exaction demanded by the sovereign as a condition to the exercise by the decedent of the privilege of transmitting his property upon death. (*Matter of Weiden*, 144 Misc. 854, 857, 858.) It is not in any aspect an exaction or tax against any particular beneficiary named in the will, and neither in the appraiser's report nor in the *pro forma* order, is any portion of the total tax, payable by the estate, allocated against any particular individual. In this respect it differs diametrically from the transfer tax formerly in vogue in this State, which was assessed against the individual recipient and was a condition imposed upon his right to take. Being a tax upon the estate as a whole it is to be computed upon the entire property of the estate in the particular manner which the statute prescribes. In this aspect, the ultimate rights of any individual to receive portions of the property of the estate are of no moment."

This court is of the opinion the amounts of the exemptions allowed by the *pro forma* tax order hereby appealed from were the only amounts " transferred " within the meaning of section 249-q of the Estate Tax Law. This theory seems to be supported by the authority of *Humes* v. *United States*, as well as by the reasonable interpretation of the meaning and intent of the new Estate Tax Law.

In view of the extremely low rates of the tax fixed by the statute, it is entirely reasonable to believe that the Legislature and the new statute which was enacted after careful study by the Commission, intended these reduced rates to compensate, in part at least, for such cases as this one where it is impossible to determine with any reasonable degree of certainty or accuracy, the ultimate beneficiary or beneficiaries and where, as here, no personal exemption can be allowed due to the many uncertainties involved.

Therefore, the appeal herein on behalf of the executors is dismissed, without costs, and the original tax order of February 27, 1933, is sustained.

Submit order accordingly.